BARRY B. KEMPSON, ATTORNEY-IN-FACT FOR MARY A. BLOOMER, PETITIONER-APPELLEE v. NORTH CAROLINA DEPARTMENT OF HUMAN RESOURCES, RESPONDENT-APPELLANT

No. 9028SC176

(Filed 30 October 1990)

1. **Social Security and Public Welfare § 1 (NCI3d)— Medicaid benefits—resource spend down**

    The DHR is required to use resource spend down to determine eligibility for Medicaid benefits so that applicants may qualify for Medicaid without actually using their excess reserve if their current medical expenses would reduce their total asset reserve below the imposed limit since (1) under 42 U.S.C.A. § 1396a(a)(17) resource spend down is an allowable, reasonable method of evaluating resources, and (2) the N. C. Medical Assistance Program requires the DHR to utilize resource spend down.

    **Am Jur 2d, Welfare Laws §§ 38-41.**

2. **Social Security and Public Welfare § 1 (NCI3d)— Medicaid benefits—retroactivity**

    A 22 December application for Medicaid benefits would provide retroactive coverage for three full months before the

month of the application so that the applicant was entitled to benefits beginning on 1 September.

**Am Jur 2d, Welfare Laws § 38.**

APPEAL by respondent from an order filed 9 November 1989 by *Judge Robert Lewis* in BUNCOMBE County Superior Court. Heard in the Court of Appeals on 19 September 1990.

Petitioner Barry B. Kempson applied for Medicaid benefits on behalf of Mary A. Bloomer on 22 December 1988 at the Buncombe County Department of Social Services ("DSS"). On 3 February 1989, DSS granted Ms. Bloomer coverage effective 2 February 1989, but denied her retroactive and prospective coverage for the period from 1 September 1988 to 1 February 1989 due to "excess reserve." Petitioner appealed the decision by DSS pursuant to N.C. Gen. Stat. § 108A-79 (1988). At a state-level appeal hearing and review, the hearing officer entered a Notice of Decision dated 24 May 1989 affirming the decision below. On 18 July 1989, after reviewing the record and additional written arguments, North Carolina Department of Human Resources' ("DHR") chief hearing officer entered a Notice of Final Decision upholding the 24 May 1989 decision. Petitioner filed his Petition for Judicial Review pursuant to N.C. Gen. Stat. § 108A-79(c) in Buncombe County Superior Court on 21 August 1989.

The case was argued before Judge Lewis who entered a written order on 9 November 1989, which reversed DHR's final agency decision, declared Ms. Bloomer eligible for Medicaid retroactive to 1 September 1988 and ordered DHR to pay her Medicaid benefits for the period between 1 September 1988 and 2 February 1989. From this Order, DHR appealed.

*Van Winkle, Buck, Wall, Starnes and Davis, by R. Walton Davis, III, for petitioner appellee.*

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Jane T. Friedensen, for the respondent appellant.*

ARNOLD, Judge.

This case was heard below on the following stipulated facts:

Petitioner has been the attorney-in-fact of Mary A. Bloomer since March 1985, and Ms. Bloomer has lived at Pisgah Manor

Health Care Center ("Pisgah Manor") since August of that year. On 1 August 1988, Ms. Bloomer owned assets worth $3,983.72 in bank accounts and a personal account at Pisgah Manor. At this time Pisgah Manor was billing her about $1,750.00 a month for nursing home expenses. By 1 September 1988, Ms. Bloomer's assets were worth only $2,071.17, but her unpaid bill to Pisgah Manor totaled $1,749.95. Between 1 September 1988 and 2 February 1989 petitioner made no payments on the Pisgah Manor account. Ms. Bloomer's financial situation during that time is summarized as follows:

| Date | Assets | Pisgah Manor Liability | Net Difference |
|---|---|---|---|
| 09/1/88 | $2,071.17 | $1,749.95 | 321.22 |
| 10/1/88 | 2,326.30 | 3,562.80 | (1,236.50) |
| 11/1/88 | 2,151.27 | 5,289.60 | (3,138.33) |
| 12/1/88 | 2,422.47 | 7,155.79 | (4,733.32) |
| 01/1/89 | 2,681.34 | 9,160.38 | (6,479.04) |
| 02/1/89 | 2,758.32 | 10,995.99 | (8,237.67) |
| 02/2/89 | 284.00 | 8,521.67 | (8,237.67) |

On 22 December 1988, Mr. Kempson applied to Buncombe County DSS for Medicaid coverage of Ms. Bloomer's Pisgah Manor bills prospectively from 1 December 1988 and retroactively from 1 September 1988 to 30 November 1988. Medically needy persons may receive assistance for as much as three months prior to the month of application. N.C. Admin. Code tit. 10, r. 50B.0204(a)(1) (October 1987). On 2 February 1989, Mr. Kempson was notified that DSS could not grant Ms. Bloomer Medicaid coverage until funds from her bank account were transferred to Pisgah Manor in an amount sufficient to reduce her assets to the applicable $1,500 one-person reserve limit. See N.C. Admin. Code tit. 10, r. 50B.0311(c) (November 1989). Mr. Kempson immediately paid Pisgah Manor $2,474.32, reducing Ms. Bloomer's assets to $284. On 3 February 1989, the County DSS granted Ms. Bloomer prospective coverage effective 2 February 1989, but denied her retroactive coverage for the period from 1 September 1988 to 1 February 1989 because her assets during that period had exceeded the $1,500 reserve limit.

[1] The issue on appeal is whether federal and state laws governing the eligibility requirements for certain Medicaid applicants require the DHR to use a procedure known as "resource spend-down."

Resource spend-down permits an individual to qualify for Medicaid benefits, even though he or she possesses resources or reserves that are greater than the limit imposed by law, by offsetting incurred medical expenses against the excess reserve. North Carolina currently requires that such persons *actually* spend excess reserve to pay their medical bills before they can qualify for Medicaid. Under a resources spend-down policy such persons would qualify for Medicaid without actually using their excess reserve if their current medical expenses would reduce their total asset reserve to below the imposed limit.

For a single person such as Ms. Bloomer, the applicable asset limit to receive medically needed assistance through DHR is $1,500. N.C. Admin. Code title 10, r. 50B.0311(c). On 1 September 1988, Ms. Bloomer had assets totalling $2,071.17, but her liability to Pisgah Manor was $1,749.95, leaving her a net difference of only $321.22. Under current state eligibility guidelines, however, she did not qualify for Medicaid coverage until Mr. Kempson reduced her assets below $1,500 on 2 February 1989.

Petitioner argued below that North Carolina's prohibition of resource spend-down conflicts with the purposes of the federal Medicaid statute and our state law. We agree.

Congress created the Medicaid program by enacting Title XIX of the Social Security Act, 42 U.S.C.A. § 1396 *et seq.*, "for the purpose of providing federal financial assistance to States that choose to reimburse certain costs of medical treatment for needy persons." *Harris v. McRae*, 448 U.S. 297, 301, 65 L.Ed.2d 784, 794 (1980). As part of the program, Congress granted states the option of providing Medicaid to the "medically needy," those persons who met the nonfinancial eligibility requirements for one of the other Medicaid categorical cash assistance programs, but whose incomes were too high for them to qualify for categorical aid and who lacked the means to pay their medical expenses. *Schweiker v. Gray Panthers*, 453 U.S. 34, 37, 69 L.Ed.2d 460, 465-66 (1981). Medical coverage for medically needy persons remains optional for states. 42 U.S.C.A. §§ 1396a(a)(10)(A)(ii), (a)(10)(C).

Respondent here contends that federal Medicaid law and regulations do not require resource spend down. The basis of this argument rests on the absence of a reference to the term "resources" in the federal law which requires that a state plan for medical assistance include reasonable standards for determining eligibility

KEMPSON v. N.C. DEPT. OF HUMAN RESOURCES

[100 N.C. App. 482 (1990)]

for medical assistance "and provide for flexibility in the application of such standards with respect to *income* . . . ." 42 U.S.C.A. § 1396a(a)(17)(D). This explicit reference to *income* has been interpreted by the courts to mean that "income spend-down" is allowed by the statute. *Atkins v. Rivera*, 477 U.S. 154, 91 L.Ed.2d 131 (1986). Thus, the medically needy may qualify for Medicaid if they incur medical expenses sufficient to reduce their *incomes* to the eligibility level. Respondent contends, however, that the absence of a reference to *resources* in the § 1396a(a)(17)(D) clause does not allow for the use of resource spend-down. While respondent is correct in that § 1396a(a)(17)(D) only mentions income in instructing states to provide flexibility in their program application standards, we note that § 1396a(a)(17)(C) instructs that a state's plan must "provide for reasonable evaluation of any such income or resources."

The Supreme Court of Massachusetts examined this same issue in 1985. In its interpretation of 42 U.S.C. § 1396a(a)(17) and its implementing regulations 42 C.F.R. §§ 435.840-435.852 (1989), the court concluded:

> We do not agree that this absence clearly precludes a resource spend down. This section requires that eligibility determinations "provide for reasonable evaluation of any such income or resources." 42 U.S.C. § 1396a(a)(17)(C). The agency administering the MA [medical assistance] benefits program must determine eligibility in a manner "consistent with objectives of this subchapter [Title XIX]." 42 U.S.C. § 1396a(a)(17)(A). If application of an income spend down is a reasonable and consistent method of evaluating income, so a resource spend down is a reasonable and consistent method of evaluating resources.

*Haley v. Com'r of Public Welfare*, 394 Mass. 466, 474-75, 476 N.E.2d 572, 578 (1985).

At least three other jurisdictions have examined this issue and all have reached the same conclusion that prohibiting the consideration of resource spend-down in determining the eligibility of the medically needy "ignores reality." *Walter O. Boswell v. Yavapai County*, 148 Ariz. App. 385, 389, 714 P.2d 878, 882 (1986); *Hession v. Illinois Dept. of Public Aid*, 129 Ill. 2d 535, 544 N.E.2d 751 (1989); Westmiller by *Hubbard v. Sullivan*, 729 F.Supp. 260 (W.D.N.Y. 1990); *contra Gandenberg v. Barry*, 687 F.Supp. 346 (S.D.Ohio 1988) (Unlike North Carolina, however, Ohio does *not*

provide benefits to the medically needy through Medicaid. *Id.* at 350.). We choose to follow the reasoning of these cases which hold that under 42 U.S.C.A. § 1396a(a)(17) resource spend-down is an allowable, reasonable method of evaluating resources.

The *Haley* court provided the following example of the effect of eligibility determinations without a resource spend-down:

> Without a resource spend down, an individual with excess resources who is aware of the department's policy is in a better position than the average individual who is unaware of the policy. The aware individual can actually spend down his excess resources as soon as he incurs medical expenses which, absent excess resources, would be eligible for payment. Once the resources are actually absorbed, the individual is eligible for payment of medical expenses.
>
> The paradox occurs with a less sophisticated individual or an individual who is not in a condition actually to spend down resources. Upon application to the department, this individual would be informed that, because of excess resources, medical expenses incurred in the last three months would not be eligible for payment. This result would occur regardless of how miniscule the excess resources were in comparison to the medical expenses incurred in that three-month period.

*Haley*, 394 Mass. at 476, n. 8, 476 N.E.2d at 578-79.

Respondent attempts to shift the blame for Ms. Bloomer's problem on Mr. Kempson. Had Mr. Kempson paid at least part of Ms. Bloomer's Pisgah Manor bill in September and immediately applied for Medicaid coverage on her behalf, the problem here would not have arisen. While in this particular situation Mr. Kempson must share some blame, we are convinced that the policy itself is flawed and when applied in many circumstances it is patently unfair. As one court examining this issue noted:

> The typical emergency patient does not arrive at a hospital with a summary of his financial condition to compare with the statutory guideline. The patient is often unconscious or otherwise physically or emotionally unable to provide the hospital with sufficient financial information to make that immediate determination. Moreover, depending on the patient's condition during the hospitalization, he may not be in a position

at the precise moment that the charges equal the spend down amount to pay those medical bills in order to establish eligibility.

*Walter O. Boswell*, 148 Ariz. App. at 389, 714 P.2d at 882.

Our review of the case law reveals a pattern where Medicaid applicants are blindsided by this eligibility requirement simply because it is so illogical. Applicants who otherwise qualify are denied coverage because they have several hundred dollars above the reserve asset limit while at the same time they are liable for tens of thousands of dollars worth of medical bills. In *Haley*, an 85-year-old woman had $497.12 in excess resources when admitted to a hospital. Her hospital expenses totaled $17,517.31 for a four and one-half month period. *Haley*, 394 Mass. at 476, n. 8, 476 N.E.2d at 579. As the court stated:

Common sense and simple mathematics require the conclusion that the $497.12 excess would have been absorbed in the first few days of hospitalization. However, [the woman] was incapable of actually spending down her resources. Therefore, the department, applying the present criteria, denied her retroactive eligibility until she actually paid out the $497.12 on June 28, 1981, thereby precluding any retroactive benefits. The unreasonableness of this result is self-evident.

*Id.*

In addition, we find that the North Carolina Medical Assistance Program requires DHR to utilize resource spend-down with regard to Mr. Kempson's request for medical assistance. The purpose of North Carolina's Medical Assistance Program is to assist in "the cost of medical and other remedial care for any eligible person when it is essential to the health and welfare of such person that such care be provided, and when the *total resources* of such person are not sufficient to provide the necessary care." N.C. Gen. Stat. § 108A-55 (1988) (emphasis added). Moreover, the legislature intended that individuals be eligible for benefits while retaining some level of personal property. A person's primary place of residence valued at less than $12,000 is excluded from consideration and $1,500 is also excluded. G.S. § 108A-55 and N.C. Admin. Code tit. 10, r. 50B.0311(2)(c). Under DHR's current policy, however, an applicant possessing resources in excess of the asset disregard is ineligible despite having incurred medical expenses that exceed his or her resources. This forces the applicant to deplete those resources

that the legislature intended to be disregarded. "By failing to consider an individual's incurred medical expenses as well as his or her assets, the Department defeats the legislature's intent." *Hession,* 544 N.E.2d at 758. In contrast, use of resource spend-down entitles an applicant to Medicaid benefits once their medical expenses exceed the excess they hold in assets. Because such a policy advances the legislative intent that the medically needy be allowed to retain some assets, we conclude that DHR must employ the resource spend-down methodology when determining Medicaid eligibility for these individuals.

[2] In its second assignment of error, respondent asserts that the period of retroactive eligibility for Ms. Bloomer began on 23 September 1988. DHR justifies this assertion by measuring the three-month retroactive period from the date of Ms. Bloomer's application on 22 December 1988. Petitioner argues that the retroactive period consists of three full months prior to the month of application, which would include all of September 1988. 42 U.S.C.A. § 1396a(a)(34) provides that medical assistance "will be made available . . . in or after the third month before the month in which he made application." State guidelines provide "Medicaid coverage is effective . . . [a]s much as three months prior to the month of application when medical services covered by the program were received and the client was eligible during the month(s) of medical need . . . ." N.C. Admin. Code tit. 10, r. 50B.0204(a)(1).

In lieu of our holding that DHR must employ resource spend-down, as of 1 September 1988 Ms. Bloomer's total assets equaled only $321.22, well below the asset limit of $1,500, entitling her to receive assistance as of that date. Our reading of the regulations above indicate that her 22 December application would provide retroactive coverage back three full months before the month of her application. Thus, we uphold the Order declaring Ms. Bloomer retroactively eligible beginning 1 September 1988.

Affirmed.

Chief Judge HEDRICK and Judge PHILLIPS concur.