Doyce ALLEN, Petitioner,

v.

UTAH DEPARTMENT OF HEALTH, DIVISION OF HEALTH CARE FINANCING, Respondent.

No. 920197.

Supreme Court of Utah.

April 8, 1993.

Michael E. Bulson, Ogden, and Steven Elmo Averett, Provo, for petitioner.

R. Paul Van Dam, Atty. Gen., Annina M. Mitchell, Douglas W. Springmeyer, Asst. Attys. Gen., Salt Lake City, for respondent.

HALL, Chief Justice:

This case is before us on a writ of certiorari to the Utah Court of Appeals. Petitioner Doyce Allen appeals the ruling affirming the final order of the Utah Department of Health, Division of Health Care Financing ("DHCF") denying him assistance from the Utah Medicaid program. We affirm.

Allen worked for many years as a truck driver for Intermountain Farmers ("Intermountain"). While a full-time employee at Intermountain, he was covered by a group health insurance policy issued by Blue Cross/Blue Shield. After retirement in December of 1988, he continued to receive insurance coverage under the Consolidated Omnibus Budget Reconciliation Act ("COBRA") for eighteen months. Before Allen's COBRA coverage expired, he began working part-time at Intermountain to save enough money to pay the premiums and maintain an individual health insurance policy. In June of 1990, prior to the expiration of the COBRA coverage, he applied for health insurance with Blue Cross/Blue Shield and was denied coverage due to previous heart surgery. As of July 1, 1990, he had no health insurance coverage.

Allen decided not to obtain health insurance but instead to wait until he became eligible for Medicare coverage at age sixty-five. At the time, he was sixty-three years old and approximately a year and a half from his sixty-fifth birthday. On January 23, 1991, Allen suffered a heart attack and incurred approximately $40,000 in medical bills.[1]

On February 4, 1991, Allen applied for Medicaid benefits under the "medically needy" program to be applied retroactively

1. Allen was in Arizona when he suffered his heart attack. Therefore, in addition to expenses

to January 1, 1991. To qualify for Medicaid, he could not have nonexempt assets in excess of $3000. A review of his assets at the first of both January and February showed him to have a savings account containing $3029.86 and a checking account containing $100. Additionally, Allen owned a Lincoln automobile worth about $600, a 1983 Ford pickup truck worth approximately $2500, and a 1981 travel trailer valued at about $7000.

While there was considerable discussion of whether the truck and travel trailer were exempt for medical purposes,[2] the Office of Family Support determined that Allen's assets in his savings and checking accounts alone were enough to exceed the $3000 limit and thus denied him Medicaid support. Following a formal hearing, DHCF affirmed the decision of the Office of Family Support, finding that Allen was unable to demonstrate that his assets were below the acceptable limit. Later, the findings and conclusions of the hearing were adopted in a "Final Agency Action and Order on Review." Allen's request for reconsideration was denied, and he sought review of the final order in the court of appeals. The court of appeals affirmed DHCF's determination, holding that the federal Medicaid program does not require states to adopt a "spend down" rule for excess resources and that the state Medicaid plan did not allow Allen to spend down excess resources in order to comply with eligibility standards.[3]

Allen appeals to this court, arguing that federal law requires DHCF to use a "resource spend down" methodology in order to permit him to spend down his assets to become eligible for Medicaid. He further argues that federal law requires state Medicaid plans to include reasonable standards and that failure to permit resource spend down violates this requirement.

■ Accordingly, the issues to be addressed are[4] (1) whether the court of appeals correctly concluded that federal law does not require DHCF to use a resource spend down system to determine Allen's eligibility for the Medicaid program, and (2) whether the court of appeals correctly concluded that the Utah Medicaid plan does not require resource spend down and that DHCF's use of a fixed asset limit, which did not allow Allen to spend down excess resources, does not violate federal requirements that eligibility standards be reasonable.[5]

■ We begin by noting the applicable standard of review. This case presents questions of law. When reviewing pure questions of law, we accord no particular deference to the agency decision or to conclusions of law made by the court of appeals but review such conclusions for correctness.[6]

Allen argues that he should be able to spend down his assets on medical bills in order to reduce his nonexempt assets and

for hospitalization, his expenses included air ambulance service to Utah and emergency service.

2. Allen's wife suffers from chronic bronchitis. Consequently, continuous oxygen and trips to warmer climates during the winter are medical necessities. The truck and trailer make such travel possible.

3. *Allen v. Utah Dep't of Health,* 829 P.2d 122, 127–28 (Utah Ct.App.1992).

4. In stating the issue(s) on appeal, Allen attacks DHCF's actions. Under the certiorari jurisdiction granted by Utah Code Ann. § 78–2–2(3)(a), this court reviews the decision of the court of appeals and does not review de novo the agen-

cy's decision. *Butterfield v. Okubo,* 831 P.2d 97, 101 n. 2 (Utah 1992).

5. With regard to whether the Allens' truck and travel trailer were exempt from consideration as medical necessities, the court of appeals never addressed the issue in light of its finding that the Allens' savings account alone exceeded the Medicaid eligibility limit. *See Allen,* 829 P.2d at 124 n. 4.

6. *Landes v. Capital City Bank,* 795 P.2d 1127, 1129 (Utah 1990) (citing *Madsen v. Borthick,* 769 P.2d 245, 247 (Utah 1988)); *see also Hurley v. Board of Review of Indus. Comm'n,* 767 P.2d 524, 526 (Utah 1988).

qualify for Medicaid.[7] In addressing this argument, the court of appeals looked to both federal and Utah Medicaid regulations.

On the question of whether federal Medicaid regulations require states to employ resource spend down, the court of appeals held that it is not mandated by federal law.[8] Allen contends that the federal Medicaid program requires states to adopt resource spend down to fulfill the purpose of the Medicaid program.[9] He relies primarily on 42 U.S.C. § 1396a(a)(17), which sets the requirements for an acceptable state plan for medical assistance. Subsection (17) provides in relevant part that a state plan must

> include reasonable standards ... for determining eligibility for and the extent of medical assistance under the plan which (A) are consistent with the objectives of this subchapter, (B) provide for taking into account only such income and resources as are ... available to the applicant or recipient ..., (C) provide for reasonable evaluation of any such income or resources, and (D) ... provide for flexibility in the application of such standards *with respect to income by taking into account ... the costs ... incurred for medical care or for any other type of remedial care recognized under State law.*[10]

Allen asserts that subsection (17)(D) mandates income spend down[11] and that resource spend down is equally necessary to achieve the purpose of the Medicaid program.[12] He further contends that refusal to implement resource spend down defeats the purpose of Medicaid.

In furtherance of his argument that resource spend down is required, Allen cites a number of cases from other jurisdictions.[13] He contends that these courts concluded that resource spend down is necessary to achieve the purpose of the Medicaid program. He then points to the fact that the Utah Legislature did not specifically address the resource spend down issue in the Utah Medical Assistance Act, nor did it indicate an intent to preclude the use of resource spend down.[14] Allen argues that because the legislature was silent on the issue and has continued to demonstrate approval of the purpose of the program by continued funding, DHCF has the authority and is free to implement resource spend down. Hence, in order to achieve the purpose of the "medically needy" program, Allen contends that resource spend down must be allowed.

The issue before this court is not whether other jurisdictions have required the use of resource spend down or whether resource spend down is permitted, but wheth-

---

7. Under the spend down concept, to become eligible for Medicaid an applicant may be able to spend down income or assets in excess of the requisite eligibility limit and in turn apply the excess to outstanding medical bills. *See Allen,* 829 P.2d at 125.

8. *Id.* at 126.

9. According to Allen, the purpose of the Medicaid program is to provide needed medical care for individuals lacking the means to provide for their own care and, when necessary, to exempt certain assets to allow applicants to qualify.

10. 42 U.S.C. § 1396a(a)(17) (emphasis added).

11. Subsection (17)(D) is recognized as the "income spend down rule." Under that subsection, states must permit Medicaid applicants to spend down excess income in order to meet the necessary level to become eligible for Medicaid. *See Allen,* 829 P.2d at 125 & n. 9.

12. Allen relies on language in the Medicaid statute which states that the purpose of Medicaid is "to furnish ... medical assistance on behalf of families with dependent children and of aged, blind or disabled individuals, whose income and *resources* are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396 (emphasis added).

13. *Hession v. Illinois Dep't of Pub. Aid,* 129 Ill.2d 535, 136 Ill.Dec. 65, 544 N.E.2d 751 (1989); *Haley v. Commissioner of Pub. Welfare,* 394 Mass. 466, 476 N.E.2d 572 (1985); *Kempson v. North Carolina Dep't of Human Resources,* 100 N.C.App. 482, 397 S.E.2d 314 (1990), *aff'd,* 328 N.C. 722, 403 S.E.2d 279 (1991).

14. *See* Utah Code Ann. §§ 26–18–1 through –11 (1989).

er states are *required* under the federal Medicaid program to implement resource spend down. Courts, including those cited by Allen, agree that federal Medicaid regulations mandate only income spend down.[15] Accordingly, resource spend down is permitted but not mandatory.[16] We therefore conclude, as did the court of appeals, that resource spend down is not mandated by federal law.

We now address whether Utah's Medicaid plan requires resource spend down. The court of appeals concluded that "there is nothing in the Utah Medicaid plan or its regulations that requires the utilization of 'resource spend down.'"[17] Allen argues that despite the fact that Utah has no specific legislative directive requiring resource spend down, Utah's Medicaid plan must permit it to comply with the requirement that reasonable standards be used for determining eligibility. He relies on the language of 42 U.S.C. § 1396a(a)(17), which provides in pertinent part, "A State plan for medical assistance must ... include reasonable standards ... for determining eligibility...." According to Allen, failure to allow for resource spend down is unreasonable and therefore violates the federal Medicaid requirements because an individual who is unable to spend down his or her assets would become liable to the full extent of his or her resources and because "the applicant who is savvy enough to spend down his or her assets before applying for medicaid would be eligible, while the applicant who applies for benefits before spending down is not eligible."[18]

We disagree with Allen's contention that a state plan that does not allow an applicant to spend down his or her resources to become eligible for Medicaid benefits is unreasonable. The legislature designated DHCF as the agency responsible for "implementing, organizing, and maintaining the Medicaid program."[19] DHCF's responsibilities are set forth in Utah Code Ann. § 26–18–2.3(1), which provides in pertinent part:

> [T]he division is responsible for the effective and impartial administration of this chapter in an efficient, economical manner. The division shall establish, on a statewide basis, a program to safeguard against unnecessary or inappropriate use of Medicaid services, excessive payments, and unnecessary or inappropriate hospital admissions or lengths of stay.

In addition, Utah's Medicaid statute provides, "The department shall develop implementing policy in conformity with this chapter, the requirements of Title XIX, and applicable federal regulations."[20] Furthermore, "[t]he department may develop standards and administer policies relating to eligibility under the Medicaid program."[21]

States requiring the use of resource spend down do so pursuant to legislative mandate within their respective Medicaid plans.[22] Utah's Medicaid plan, however, does not provide for the use of resource spend down, nor does it indicate an intent to preserve the resources of individuals applying for benefits. We therefore agree with the court of appeals and hold that Utah has not adopted a resource spend down system. Moreover, in light of our holding above that resource spend down is not required by federal law and the fact that the legislature has granted DHCF

**15.** *See Allen*, 829 P.2d at 126 & nn. 10–11.

**16.** *See id.* at 126 & n. 11.

**17.** *Id.* at 128.

**18.** *Id.* at 129 (Bench, J., dissenting).

**19.** Utah Code Ann. § 26–18–2.1 (1989).

**20.** *Id.* § 26–18–3(2) (Supp.1992).

**21.** *Id.* § 26–18–4(1) (1989).

**22.** *See, e.g., Hession*, 136 Ill.Dec. at 71, 544 N.E.2d at 757 (based on clear manifestation of legislative intent to preserve beneficiaries' resources, court held that Illinois Medicaid plan required resource spend down); *Haley*, 476 N.E.2d at 579 (based on statute that explicitly applied resource spend down, court held Massachusetts Medicaid plan required it).

broad discretion to set Medicaid eligibility standards consistent with federal requirements, we conclude that it was not unreasonable for DHCF to apply a fixed asset limit and not permit Allen to spend down his assets so as to become eligible for Medicaid benefits.

In sum, the court of appeals adequately addressed the issues and was in all respects correct in concluding that federal law does not require states to permit resource spend down and that the Utah Medicaid plan does not require it. Furthermore, we are not persuaded that it was unreasonable for DHCF not to allow for it. We have duly reviewed and considered Allen's other claims raised on appeal and find them to be without merit. Affirmed.

HOWE, Associate C.J., and STEWART, DURHAM and ZIMMERMAN, JJ., concur.