Shauna BLEAZARD, Petitioner,

v.

UTAH DEPARTMENT OF HEALTH,
DIVISION OF HEALTH CARE
FINANCING, Respondent.

No. 920787–CA.

Court of Appeals of Utah.

Aug. 25, 1993.

Ronald S. Fujino, David B. Erickson and David J. Hardy, Charles F. Loyd, Jr. (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for petitioner.

Jan Graham, State Atty. Gen., Todd A. Utzinger (argued), Asst. Atty. Gen., J. Stephen Mikita and Douglas W. Springmeyer, Salt Lake City, for respondent.

Before GARFF, GREENWOOD and ORME, JJ.

## OPINION

GREENWOOD, Judge:

Petitioner Shauna Bleazard (Bleazard) appeals from the decision of the Utah Department of Health, Division of Health Care Financing (DHCF), denying Medicaid benefits to her minor daughter Jody Bleazard (Jody). We affirm.

## BACKGROUND

Bleazard's daughter, Jody, was hospitalized at the Primary Children's Medical Center from February 12, 1992 through April 2, 1992. Bleazard sought medical benefits for Jody for the month of March, which DHCF denied on the basis that Jody failed to meet Medicaid eligibility criteria. Bleazard then requested a formal adjudication hearing before a hearing officer. At the hearing, the hearing officer recommended that Jody be provided benefits because she qualified for Medicaid under category "F," which provides benefits for "Families and Children." The Acting Director of the Department of Health, however, declined to follow the hearing officer's recommendation and denied benefits, reasoning that Bleazard's income and assets had to be considered as available to Jody and their inclusion as financial resources disqualified Jody from eligibility for Medicaid benefits. DHCF then denied Bleazard's request for reconsideration and this appeal followed.

## ANALYSIS

On appeal, Bleazard claims DHCF erred in denying Medicaid benefits for Jody, because (1) Jody was entitled to benefits as a resident of an institution as provided in applicable regulations, (2) DHCF relied on inapplicable regulations concerning "temporary absences," and (3) her income and assets should not have been considered in determining Jody's eligibility.

This appeal requires us to construe federal and state statutes, regulations and rules governing the Medicaid program. Thus, it presents questions of law and "we accord no particular deference to the agency decision ... but review ... for correctness." *Allen v. Department of Health*, 850 P.2d 1267, 1269 (Utah 1993).

### Medicaid Program

"Medicaid was established in 1965 through Title XIX of the Social Security Act[1] as a cooperative federal and state cost-sharing venture for the provision of basic medical services to eligible applicants." *Hogan v. Heckler*, 769 F.2d 886, 887 (1st Cir.1985) *cert. denied*, 478 U.S. 1007, 106 S.Ct. 3301, 92 L.Ed.2d 715 (1986). *See also* 42 U.S.C. § 1396 et seq. (1992 and Supp.1993); *Harris v. McRae*, 448 U.S. 297, 301 & 308, 100 S.Ct. 2671, 2680 & 2683–84, 65 L.Ed.2d 784 (1980). The Medicaid program provides benefits for two types of beneficiaries. First, it assists the "categorically needy," who receive financial assistance for basic necessities under either the Aid to Families with Dependent Children (AFDC) program, or the Supplemental Security Income (SSI) program for the aged, blind, or disabled. *Camacho v. Perales*, 786 F.2d 32, 33 (2d Cir.1986). Those who are "categorically needy" automatically qualify for Medicaid benefits upon application because "Congress considered these persons 'especially deserving of public assistance' for medical expenses." *Atkins v. Rivera*, 477 U.S. 154, 157, 106 S.Ct. 2456, 2458, 91 L.Ed.2d 131 (1986). *See also Schweiker v. Hogan*, 457 U.S. 569, 572, 102 S.Ct. 2597, 2600, 73 L.Ed.2d 227 (1982); *Winter v. Miller*, 676 F.2d 276, 277 (7th Cir.1982).

Second, it provides benefits to the "medically needy," "persons who meet the requirements for SSI or AFDC (i.e., aged, blind, or disabled persons, or families with dependent children) but whose income or assets exceed the limits that would qualify them for these programs." *Heckler*, 769 F.2d at 888. These persons may qualify for Medicaid benefits if they incur medical expenses which reduce their financial resources to the eligibility level as described in 42 U.S.C. § 1396a(a)(17). *Atkins*, 477 U.S. at 158, 106 S.Ct. at 2459. *See Allen v. Department of Health*, 850 P.2d 1267, 1270 (Utah 1993). The "medically needy" were deemed by Congress to be "less needy" than the "categorically needy" and "may become eligible for Medicaid benefits if their incomes prove inadequate to 'meet the costs of necessary medical or remedial care

[1]. "The Social Security Act is among the most intricate ever drafted by Congress. Its Byzantine construction ... makes the Act 'almost unintelligible to the uninitiated.'" *Schweiker v. Gray Panthers*, 453 U.S. 34, 43, 101 S.Ct. 2633, 2640, 69 L.Ed.2d 460 (1981) (citations omitted).

and services.'" *Winslow v. Commissioner, Maine Dept. of Human Servs.,* 795 F.Supp. 47, 48 (D.Me.1992) (quoting 42 U.S.C. § 1396a(a)(10)(C)).[2]

■ Participating states must provide benefits to the "categorically needy," but have discretion in deciding whether to provide benefits for the "medically needy." *Allen v. Department of Health,* 829 P.2d 122, 124–25 (Utah App.1992), *aff'd,* 850 P.2d 1267 (Utah 1993). The purpose in differentiating between the two categories was described as follows:

> Congress has differentiated between the categorically needy—a class of aged, blind, disabled, or dependent persons who have very little income—and other persons with similar characteristics who are self-supporting. Members of the former class are automatically entitled to Medicaid; members of the latter class are not eligible unless a State elects to provide benefits to the medically needy and unless their income, after consideration of medical expenses, is below state standards of eligibility.

*Schweiker,* 457 U.S. at 589, 102 S.Ct. at 2609.

■ State Medicaid plans must comply with federal requirements, including those regarding eligibility. *Id.* at 572, 102 S.Ct. at 2600; *Atkins,* 477 U.S. at 157, 106 S.Ct. at 2458; *Hogan,* 769 F.2d at 887; *Rye Psychiatric Hosp. Ctr., Inc. v. Surles,* 777 F.Supp. 1142, 1144 (S.D.N.Y.1991); *Potter v. James,* 499 F.Supp. 607, 610 (M.D.Ala. 1980); *Correll v. Division of Social Servs.,* 332 N.C. 141, 418 S.E.2d 232, 234 (1992); *Morgan v. Department of Health and Welfare,* 120 Idaho 6, 813 P.2d 345, 348 (1991). Also, states must use the same methodology to determine the income and resource eligibility for both medically needy and categorically needy applicants. *Atkins,* 477 U.S. at 158, 106 S.Ct. at 2459; *Winter,* 676 F.2d at 277.

Utah opted to participate in the "medically needy" Medicaid program by enacting the Medical Assistance Act in 1981. Utah Code Ann. §§ 26–18–1 to –11 (1989 and Supp.1993); *Allen,* 829 P.2d at 126. The act designates DHCF as the state agency to administer Utah's Medicaid program. Utah Code Ann. §§ 26–18–2.1 (1989), 26–18–3 (Supp.1993). DHCF is further authorized to "develop implementing policy in conformity with [the state statute], the requirements of Title XIX, and applicable federal regulations," *id.* § 26–18–3 (Supp. 1993), and to "develop standards and administer policies relating to eligibility under the Medicaid program." *Id.* § 26–18–4(1) (1989).

Utah's Medicaid plan, approved by the Secretary of Health and Human Services, is codified at Utah Admin.Code R455–1–1 to –48. Utah's plan provides that "[t]he department shall provide medicaid coverage to ... the medically needy individuals as described in 42 CFR § 435.301–435.308, 1990 ed." Utah Admin.Code § R513–333–305(1) (1992).

### Qualification as Medically Needy

■ Bleazard contends that DHCF erred in interpreting Utah's Medicaid plan for the "medically needy," as requiring that her income and assets be deemed available to Jody and incorrectly based its determination of Jody's ineligibility for Medicaid benefits on that error. She argues that Utah's rules entitle a minor residing in a medical institution to Medicaid funds so long as the child's individual resources do not exceed the specified limits and that parental resources should not be considered in calculating the child's resources. After review of the myriad of Medicaid regulations, however, we conclude that Jody was not a "resident" of a medical institution and that DHCF correctly applied AFDC guidelines for eligibility which mandate consideration of Bleazard's income and resources.

To support her claims, Bleazard relies primarily on provisions in the Utah Administrative Code and in various Assistance Payments Administration Manuals (APA

---

**2.** "Assuming that the supply of public funds for medical assistance is limited, the more generous the State is to the medically needy, the fewer funds there are available for the categorically needy, who Congress has said must have priority." *Camacho,* 786 F.2d at 42.

Manuals). The APA Manuals contain rules drafted by the Department of Human Services pursuant to Utah Code Ann. § 26–18–3 (Supp.1993).[3]

Bleazard cites the following provisions of APA Manual III as lending support to her contention that Medicaid benefits should be granted:

> Residents of certain institutions are not eligible for Medicaid. Residents of other institutions may be eligible for Medicaid. If so, follow the rules in Volume III–M for the months in which the client must be considered a resident of a medical institution. (APA Manual III–F § 215).

> Medicaid policy defines all dwellings as either a household or an institution. (APA Manual III–F § 215–1).

> A person living in an institution is a resident of an institution, beginning the month after he enters an institution. The client remains a resident of an institution as long as he continues to live there until the month before he leaves the institution. (APA Manual III–F § 215–3).

> A resident of a medical institution may be eligible for Medicaid if all the factors of eligibility are met. Follow the rules in Volume III–M. (APA Manual III–F § 215–4).

> If the client is an unemancipated child, count the income of the parents to determine eligibility in the month of entry and the month of discharge into the medical institution. Beginning the month *AFTER* entry into the medical institution and until the month before discharge, count only the client's income. (APA Manual III–M § 485(3)) (emphasis in original).

> Count only the assets of the client to determine eligibility. If the client is an unemancipated child, count the assets of the parents *ONLY* for the month of entry and the month of discharge. (APA Manual III–M § 557–1).

**3.** The parties agree that the only Medicaid benefits at issue here are for the month of March 1992, during which Jody was continuously in a

Bleazard argues that because these rules define Jody as a resident of a medical institution during March 1992, only her financial resources, not those of her parent, could be considered in determining her eligibility for "medically needy" Medicaid benefits. Bleazard's argument, however, fails because it disregards the requirement that provisions in the APA Manuals comply with federal Medicaid requirements and fails to take into account the impact of other state regulations. These requirements and regulations indicate that Bleazard's income was properly deemed available to Jody and that Jody's temporary absence from home for medical treatment did not convert her into a "resident" of a medical institution.

Pursuant to 42 U.S.C. § 1396a(a)(17) (1992), states participating in the "medically needy" Medicaid program must determine eligibility under standards which are "reasonable" and "comparable" for all groups. *Atkins v. Rivera*, 477 U.S. 154, 158, 106 S.Ct. 2456, 2459, 91 L.Ed.2d 131 (1986). Relevant federal regulations require the income eligibility of medically needy individuals to be determined as follows: "For individuals under age 21 … the agency must deduct amounts that would be deducted in determining eligibility under the State's AFDC plan." 42 C.F.R. § 435.831(a)(1) (1992). Further, "To determine eligibility on the basis of resources for medically needy individuals, the agency must consider only the individual's resources and those that are considered available to him under the financial responsibility requirements for relatives in § 435.821." 42 C.F.R. § 435.845(a).

"The agency must consider the parent's … income and resources as available if they are actually contributed to the individual. The agency may consider income and resources of … parents as available to the individual even if they are not actually contributed to the individual." 42 C.F.R. § 435.821(b), (c).

Further, state plans must describe:

"medical institution," namely Primary Children's Medical Center.

the single standard to be employed in determining income and resource eligibility for all such groups, *and the methodology to be employed in determining such eligibility, which shall be the same methodology which would be employed under [AFDC or SSI].* 42 U.S.C. § 1396a(a)(10)(C)(i)(III).

*Atkins,* 477 U.S. at 158, 106 S.Ct. at 2459 (emphasis added).

Thus, controlling federal law requires that the determination of "medically needy" financial eligibility in this case must be consistent with standards for AFDC eligibility. Under AFDC, income and assets of Jody's parent must be "deemed" to be available to her because Jody is an unemancipated minor. Because AFDC requires this deeming of parental resources for the "categorically needy," it must likewise be considered when determining Jody's eligibility for "medically needy" Medicaid benefits.

Other portions of the APA Manuals and federal regulations also demonstrate that under the circumstances of this case, Jody should not be considered a "resident" of a medical institution so as to qualify her for Medicaid benefits. For example, APA Manual III–M § 305–2(1) directly contradicts Bleazard's argument by providing:

> Consider the child or the specified relative to be "living with" each other if either one is temporarily absent from the home. Temporary absence may include brief periods of institutionalization for medical care. Clients who are temporarily absent are *not* residents of medical institutions.

Similarly, APA Manual III–F, § 305–3(4) states, "Count adults or children as living with each other during temporary absences from the home ... for medical treatment."

These rules are consistent with federal regulations which define residency in a household as including circumstances when a child's parent or relative "exercises responsibility for the care and control of the child, even though ... the child ... is temporarily absent from the customary family setting." 45 CFR § 233.90(c)(v)(A)(B) (factors specific to AFDC).

The foregoing provisions require DHCF to determine whether an applicant is temporarily absent from home for medical treatment by ascertaining if a parent or other relative continues to exercise responsibility for the child. In this case, because Bleazard did not demonstrate that she ceased to have responsibility or care for Jody and Jody was only temporarily absent from home while receiving medical treatment, Jody was not a "resident" of a medical institution for purposes of Medicaid qualification.

## CONCLUSION

Federal law requires that eligibility for "medically needy" Medicaid benefits be determined in a manner that is consistent with the method for evaluating resources for AFDC and SSI purposes. In the case of an unemancipated child, resources include those available from a parent. Consistent with these standards, a child's temporary absence from home will not qualify him or her for benefits independent of parental resources. In contrast to Bleazard's theory of this case, Medicaid is not intended to provide benefits to the medically needy in circumstances where financial need is not fully demonstrated and where benefits would be inconsistent with requirements for the higher priority classification of the categorically needy. Although viewing some of Utah's Medicaid rules in the APA Manuals in isolation may arguably suggest the availability of benefits, that interpretation would contravene controlling federal law. Therefore, we affirm DHCF's denial of benefits to Jody.

GARFF and ORME, JJ., concur.