HILTON HOTEL and Pacific Reliance
Insurance, Petitioners,

v.

INDUSTRIAL COMMISSION OF UTAH,
and Jessica D. Jacobsen,
Respondents.

No. 940594–CA.

Court of Appeals of Utah.

June 8, 1995.

Stuart L. Poelman, Julianne P. Blanch, Snow, Christensen & Martineau, Salt Lake City, for petitioners.

Alan L. Hennebold, M. David Eckersley, Prince, Yeates & Geldzahler, Salt Lake City, for respondent Jacobsen.

Before DAVIS, BENCH and WILKINS, JJ.

DAVIS, Associate Presiding Judge:

Hilton Hotel and Pacific Reliance Insurance (collectively referred to as "Hilton") petition for review of the Industrial Commission's (Commission) determination that Jessica D. Jacobsen sustained a compensable industrial accident while in Hilton's employ and its order awarding her workers' compensation benefits. We reverse and remand.

## FACTS

The facts are essentially undisputed. Jacobsen began working as a cocktail waitress for the Salt Lake Hilton Hotel in January of 1992. Her duties included lifting trays filled with dishes and meals. On April 19, 1992, Jacobsen was lifting a heavy tub of dishes [1] when she experienced a pain in her back. The pain was not severe enough for her to stop working and she did not feel it necessary to fill out an accident report.

On May 6, 1992, Jacobsen was lifting a tray filled with meals [2] approximately one and one-half feet from the service station onto her left shoulder when she experienced pain in her neck and back, and a "clawing" sensation in her left hand. The pain was so severe that Jacobsen ceased working. The next day, Jacobsen visited Work Care at Hilton's request. The Work Care physician

who attended Jacobsen diagnosed her condition as degenerative back disease and recommended that she spend six to eight weeks in physical therapy before returning to work. Jacobsen sought a second opinion from Dr. Craig McQueen, who concurred with Work Care's recommendation.

Jacobsen went through the necessary physical therapy, and thereafter returned to work at Hilton on July 15, 1992. Although Jacobsen did not have any initial problems, her symptoms returned by mid-August. Because of her problems, Jacobsen terminated her employment with Hilton on August 29, 1992.

After Jacobsen resigned from her position at Hilton she applied for workers' compensation benefits, claiming that as a result of the May 6 incident, she had numbness in her hands, problems with her grip, decreased range of motion in her neck, and neck pain. Hilton denied Jacobsen benefits, claiming that her problems were the result of preexisting injuries.[3] Jacobsen then instituted the present case.

After hearing testimony and receiving evidence, the administrative law judge (ALJ) referred the case to a medical panel appointed to evaluate Jacobsen's injuries. The ALJ then determined that although the medical panel's report and the other evidence before it were sufficient to support the finding of a preexisting back problem, they were insufficient to establish that Jacobsen suffered from a preexisting neck condition, which would have required her to prove a higher standard of legal causation. *See Allen v. Industrial Comm'n*, 729 P.2d 15, 25–26 (Utah 1986). Thus, the ALJ concluded that Jacobsen had sustained a compensable industrial

---

1. Jacobsen testified that this was not a normal requirement of her job and that she was carrying the tub of dishes primarily because another employee had called in sick and she was "tak[ing] up the slack."

2. The tray weighed anywhere from 16.5 pounds to 30 pounds.

3. Jacobsen had experienced several mishaps preceding her employment with Hilton. At age fourteen, Jacobsen sustained a head injury from gymnastics. In 1971, she was diagnosed with having a congenitally unstable back. The follow-

ing year, Jacobsen was diagnosed with degenerative disc disease. In 1982, she was involved in a car accident which created neck problems one month after the accident. Jacobsen was also injured while skiing in January 1992; this accident resulted in neck problems, tingling in Jacobsen's hands, and mid and lower back problems. On January 6, 1992, before she began working for Hilton, Jacobsen saw her chiropractor with complaints of back pain, headaches, numbness in her limbs and fingertips, breathing problems, and a popping sensation in her clavicle.

accident on May 6, 1992, and ordered Hilton to pay Jacobsen workers' compensation benefits.

Hilton filed a motion for review and for receipt of supplemental medical report with the Commission. Hilton provided a letter from Dr. Louis Schricker who had evaluated Jacobsen's case and concluded that Jacobsen did have a preexisting neck condition which contributed to the May 6 injury. Because there was sufficient evidence of a preexisting neck condition, Hilton opined, Jacobsen should be held to the higher level of legal causation set forth in *Allen*. As Jacobsen's work activity on May 6 did not constitute an unusual or extraordinary exertion, Jacobsen had failed to prove legal causation and therefore did not sustain a compensable accident. Jacobsen responded by claiming, among other things, that her work activities "in which [she] was involved at the time of her injury involved lifting a large tray in an awkward manner," and, therefore, this work activity met the higher standard of legal causation set forth in *Allen*.

The Commission concurred with Hilton and found that Jacobsen did indeed suffer from a preexisting neck condition which contributed to the injury. Based on this finding, the Commission concluded that Jacobsen "must demonstrate that her 'cumulative work-related exertion exceeds the normal level of exertion in nonemployment life,'" quoting *Nyrehn v. Industrial Comm'n*, 800 P.2d 330, 336 (Utah App.1990), *cert. denied*, 815 P.2d 241 (Utah 1991). Applying the facts to the legal standard, the Commission determined that "[a]fter considering the demands of Ms. Jacobsen's employment, ... the requirements of her work, and in particular the repetitious lifting of loaded serving trays, exceeds [sic] the normal level of exertion customarily experienced in nonemployment life." Thus, the Commission held that "even though Ms. Jacobsen suffered from a preexisting condition, she has satisfied the *Allen* requirement of legal causation and is entitled to the workers' compensation benefits awarded by the ALJ." Hilton appeals.

## ISSUE

Hilton advances only one issue on appeal: Was the Commission's sua sponte consideration of Jacobsen's cumulative work-related exertion, as opposed to the single injury occurring on May 6, improper?

## STANDARD OF REVIEW

■ Whether the Commission acted improperly by raising and deciding an issue sua sponte is a question of law. "When reviewing pure questions of law, we accord no particular deference to the agency decision ... but review such conclusions for correctness." *Allen v. Utah Dep't of Health*, 850 P.2d 1267, 1269 (Utah 1993).

## ANALYSIS

■ Hilton alleges the Commission improperly decided the issue of legal causation by raising and considering sua sponte a cumulative trauma theory of Jacobsen's work activities without proper briefing by the parties. Because neither Hilton nor Jacobsen advanced the theory that the repetitive nature of Jacobsen's work-related exertion was the cause of her injury, Hilton argues it was denied the right to present evidence to rebut the Commission's conclusion.

An employee is entitled to compensation for an injury which occurs as a result of an "accident arising out of and in the course of his [or her] employment," Utah Code Ann. § 35–1–45 (1994), even though, as in the case at bar, the employee suffers from a preexisting condition. *Allen v. Industrial Comm'n*, 729 P.2d 15, 25 (Utah 1986). *Allen* established a two-prong analysis for determining whether an employee suffering from a preexisting condition is entitled to compensation under section 35–1–45. First, the claimant must show that the injury occurred by "accident." *Id.* at 18. An accident is defined as

> "an unanticipated, unintended occurrence different from what would normally be expected to occur in the usual course of events.... [T]his is not necessarily restricted to some single incident which happened suddenly at one particular time and does not preclude the possibility that due to exertion, stress or other repetitive cause, a climax might be reached in such

manner as to properly fall within the definition of an accident as just stated above." *Id.* (quoting *Carling v. Industrial Comm'n,* 16 Utah 2d 260, 261–62, 399 P.2d 202, 203 (1965) (citations omitted)). It is undisputed that Jacobsen suffered an "accident," thereby satisfying the first prong of the analysis.

 The claimant must next show the injury arose out of and in the course of his or her employment, or that there exists a "causal connection between the injury and the employment." *Id.* at 18. In order to demonstrate the necessary causal connection, *Allen* established a two-part requirement of legal causation and medical causation. Essential to demonstrating legal causation is a showing of unusual or extraordinary exertion "where the claimant suffers from a preexisting condition which contributes to the injury." *Id.* at 26. Medical causation requires a showing that "the disability is medically the result of an exertion or injury that occurred during a work-related activity." *Id.* at 27. The parties do not dispute medical causation; we therefore address only the legal causation prong.

The Utah Supreme Court noted that

[t]he question of whether the employment activities of a given employee are sufficient to satisfy the legal standard of unusual or extraordinary effort involves two steps. First, the agency must determine as a matter of fact exactly what were the employment-related activities of the injured employee. Second, the agency must decide whether those activities amounted to unusual or extraordinary exertion.

*Price River Coal Co. v. Industrial Comm'n,* 731 P.2d 1079, 1082 (Utah 1986). In the case at bar, the Commission decided that Jacobsen's employment-related activities were the repetitive nature of lifting the trays from the service counter throughout her employment with Hilton. Hilton argues, however, that the parties agreed Jacobsen's employment-related activities were the single incident of lifting the tray from the service counter on May 6, and no one, not even the ALJ, advanced a theory of, presented evidence on, or considered the issue of repetitive trauma.

Thus, Hilton continues, the Commission inappropriately considered the theory sua sponte, without giving Hilton an opportunity to challenge the theory. Jacobsen responds by claiming that even though cumulative trauma may not have been a theory for her recovery, the Commission had sufficient evidence before it to consider and determine the issue.

An analogous issue was before this court in *Chevron U.S.A., Inc. v. State Tax Comm'n,* 847 P.2d 418 (Utah App.1993). In *Chevron,* the petitioners were seeking review of a State Tax Commission (Tax Commission) determination regarding assessment of the petitioners' refineries. The petitioners were notified by the Property Tax Division (Division) of the Tax Commission that the petitioners' refineries would be centrally assessed, as opposed to locally assessed. The petitioners requested redetermination by the Tax Commission, which upheld the central assessment with respect to Chevron in part pursuant to subsection (a) of Utah Code Ann. § 59–2–201(1) (1989) (relating to property operating as a unit across county lines).

On appeal from the Tax Commission's determination, Chevron claimed it was not apprised of the Division's reliance on subsection (a)[4] when it determined Chevron's refineries should be centrally assessed. The Division did not indicate its reliance on subsection (a) in its initial determination, nor did it advance this theory in its briefs or argument before the Tax Commission. In fact, Chevron's first indication of the Tax Commission's intent to apply subsection (a) was in the Tax Commission's final decision. Therefore, Chevron was not given the opportunity to present evidence regarding subsection (a) or to argue against its application.

The court concluded that it was improper for the Tax Commission to raise and decide the subsection (a) issue sua sponte when it was never an "expressed or implied part of the Division's theory as to why the refinery should be centrally assessed." *Id.* at 421. Only a "passing reference" was made regarding subsection (a) in the presentation of evidence. *Id.* It was further noted by the court that

---

4. As opposed to other bases for assessment by the Division.

"[i]t is error to adjudicate issues not raised before or during trial and unsupported by the record. The trial court is not privileged to determine matters outside the issues of the case, and if he [or she] does, his [or her] findings will have no force or effect. In law or in equity, a judgment must be responsive to the issues framed by the pleadings, and a trial court has no authority to render a decision on issues not presented for determination. Any findings rendered outside the issues are a nullity." [5]

*Id.* at 420 (quoting *Combe v. Warren's Family Drive–Inns, Inc.,* 680 P.2d 733, 736 (Utah 1984) (citations omitted)).

Raising an issue not addressed by the parties is inappropriate and outside of the discretion given the governing tribunal because it encroaches upon the advocate responsibility conferred upon counsel. *Id.* at 421. Furthermore, if a party fails to raise an issue and present evidence regarding the same, it has waived the right to do so. *Id.* Thus, " '[t]he interests of justice are not enhanced when the court exceeds its role as arbiter by reaching out and deciding an issue that would otherwise be dead, it not having been litigated at the time of trial.' " *Id.* (quoting *Girard v. Appleby,* 660 P.2d 245, 247 (Utah 1983)).

■ In the case at bar, cumulative or repetitive trauma was never addressed as a part of Jacobsen's case. To the contrary, the evidence demonstrates that Jacobsen understood her work activity resulting in her injury to be the lifting of the tray from the service counter to her shoulder on May 6. In Jacobsen's Application for Hearing before the Commission, Jacobsen claims that she "sustained an injury by accident arising out of and in the course of employment with" Hilton on May 6, 1992. On the injury report filed with the Commission, the date of injury was listed as May 6, 1992. On the injury report filled out at Work Care and signed by Jacobsen, the date and time of injury is listed as May 6 at 7:30. Dr. Walter Reichert, a

neurologist who evaluated Jacobsen after the May 6 incident, states in a letter addressed to Jacobsen's counsel that the cause of Jacobsen's current symptoms "is [a] lifting injury from 7 May 1992." [6] Furthermore, in a letter from the ALJ to the medical panel assigned to evaluate Jacobsen's injuries, the ALJ repeatedly refers to the "industrial accident of May 6, 1992."

As in *Chevron,* the issue of repetitive trauma was only referred to in passing. During Jacobsen's testimony before the ALJ, she claims that she was "required to carry trays at all times." No evidence was presented by either party regarding the average weight of the trays, how far Jacobsen had to carry the trays, or how often she had to lift them. *See Allen,* 729 P.2d at 28. In addition, the medical panel's report stated that

> [o]n 19 April 1992, she was lifting a heavy tub of dishes and felt pain in the mid-back and shoulder areas. . . . She feels the pain never went away during the interval between then and 6 May 1992.

The grounds for Jacobsen's workers' compensation claim, however, were numbness in her hands, problems with her grip, decreased range of motion in her neck, and neck pain; not, as the medical panel's report mentions, pain in the mid-back and shoulder areas. Thus, Hilton was never apprised by Jacobsen that a basis of her claim was cumulative trauma. As a result, Hilton was denied the opportunity to present evidence and challenge this type of claim.

■ Because cumulative trauma was not an expressed or implied theory presented by Jacobsen, she waived the right to advance that claim. Therefore, the Commission's decision regarding this issue was outside the issues presented for adjudication and is a nullity. Accordingly, the Commission's ruling that "the requirements of [Jacobsen's] work, and in particular the repetitious lifting of loaded serving trays, exceeds [sic] the normal level of exertion customarily experi-

---

5. While the quoted language is couched in terms of a trial court's duty regarding sua sponte issues, *Chevron* unequivocally held that the same conclusion applies to administrative tribunals. *Chevron,* 847 P.2d at 421.

6. Although Dr. Reichert's letter provides May 7 as the date of injury, we assume he meant May 6.

enced in nonemployment life," and its subsequent order awarding Jacobsen workers' compensation benefits based on the cumulative trauma theory is reversed. We agree with Hilton's assertion that the Commission may have been confused.[7] Because the record is devoid of any indication that the Commission applied the *Allen* standard to the May 6, 1992 incident, we remand the case to the Commission to determine whether that single lifting episode amounted to an unusual or extraordinary exertion.

BENCH and WILKINS, JJ., concur.

---

[7]. Hilton suggests that the Commission's confusion regarding the appropriate legal standard may have resulted from its misinterpretation of *Nyrehn v. Industrial Comm'n,* 800 P.2d 330 (Utah App.1990), *cert. denied,* 815 P.2d 241 (Utah 1991). In the case at bar, the Commission stated that because Jacobsen suffered from a preexisting condition which contributed to her injury, she had the burden of demonstrating that "her 'cumulative work-related exertion exceeds the normal level of exertion in nonemployment life,' " and cites *Nyrehn* for this proposition. Thus, the Commission interpreted *Nyrehn* to hold that any time a claimant suffers a work-related injury to which a preexisting injury contributed, he or she must prove that his or her cumulative work-related exertion, as opposed to a single injury-causing event, amounts to unusual or extraordinary exertion.

However, this interpretation of *Nyrehn* would prohibit recovery for an injury such as one where an employee is performing work which is not a normal part of his or her duties, or where a single work-related incident constitutes unusual or extraordinary exertion, but the employee's cumulative work-related exertion does not. This interpretation of *Nyrehn* clearly is not the status of the law. *See, e.g., Price River Coal Co. v. Industrial Comm'n,* 731 P.2d 1079, 1083 (Utah 1986) (to conclude whether work-related exertion was unusual or extraordinary, court must determine what worker's job-related activities were on day of death); *Smith & Edwards Co. v. Industrial Comm'n,* 770 P.2d 1016, 1017 (Utah App.1989) (work-related activities were activities on day in question); *Sisco Hilte v. Industrial Comm'n,* 766 P.2d 1089, 1091 (Utah App.1988) (ALJ's findings regarding employment-related activities involved exertion on day of injury).

While it is true that the claimant's injury in *Nyrehn* was the result of repeated work-related exertions, 800 P.2d at 336, the holding in that case does not require a showing of an unusual or extraordinary cumulative exertion to recover for a work-related injury. Only

> [w]hen an accident is the climax of repeated exertions, as in Nyrehn's case, [is] work-related "exertion," for purposes of proving legal causation, ... the aggregate exertion of the repetitive exertions that establish the accident.... In other words, [only in these types of cases] we must consider the whole burden on the camel and not just the straw that breaks the camel's back.

*Id.* Thus, the Commission's interpretation of *Nyrehn* was in error.