*This opinion is subject to revision before
publication in the Pacific Reporter*

**2016 UT 49**

IN THE

# SUPREME COURT OF THE STATE OF UTAH

UTAH PHYSICIANS FOR A HEALTHY ENVIRONMENT and
UTAH CHAPTER OF THE SIERRA CLUB,
*Petitioners,*

*v.*

EXECUTIVE DIRECTOR OF THE UTAH DEPARTMENT
OF ENVIRONMENTAL QUALITY and the
DIRECTOR OF THE UTAH DIVISION OF AIR QUALITY,
in their official capacity, the
UTAH DEPARTMENT OF ENVIRONMENTAL QUALITY,
the UTAH DIVISION OF AIR QUALITY, and
TESORO REFINING & MARKETING CO., LLC,
*Respondents.*

No. 20141132
Filed October 26, 2016

On Appeal from Final Action of Administrative Agency

Attorneys:

Joro Walker, Charles R. Dubuc, Jr., Salt Lake City, for petitioners
Utah Physicians for a Healthy Environment
and Utah Chapter of the Sierra Club

Sean D. Reyes, Att'y Gen., Christian C. Stephens, Craig W. Anderson,
Marina V. Thomas, Asst. Att'ys Gen., Salt Lake City, for respondents
Utah Department of Environmental Quality and
Utah Division of Air Quality

Michael A. Zody, Michael J. Tomko, Jacob A. Santini,
Salt Lake City, for respondent Tesoro Refining & Marketing Co., LLC

JUSTICE HIMONAS authored the opinion of the Court, in which
CHIEF JUSTICE DURRANT and ASSOCIATE CHIEF JUSTICE LEE joined.

JUSTICE DURHAM filed a dissenting opinion.

JUSTICE JOHN A. PEARCE became a member of the Court on
December 17, 2015, after oral argument in this matter,
and accordingly did not participate.

Justice Himonas, opinion of the Court:

**INTRODUCTION**

¶ 1    This case concerns the decision of the Executive Director of the Utah Department of Environmental Quality (UDEQ) to dismiss a Request for Agency Action filed by Utah Physicians for a Healthy Environment and the Utah Chapter of the Sierra Club, the Petitioners in this action. In their Request for Agency Action, the Petitioners challenged a permit allowing certain changes at Tesoro Refining and Marketing Company's Salt Lake City Refinery that was approved by the Director of the Utah Division of Air Quality (UDAQ).[1] The Petitioners believe that the Director of UDAQ conducted a legally insufficient analysis when he approved Tesoro's changes at the refinery, and they therefore initiated a permit review adjudicative proceeding. As required by Utah Code section 19-1-301.5(5), the Executive Director appointed an Administrative Law Judge (ALJ) to conduct the permit review adjudicative proceedings. Upon completion of the proceedings, which took place over a nearly two-year period, the ALJ recommended that the Petitioners' challenge be dismissed. The Executive Director adopted the ALJ's findings of fact, conclusions of law, and proposed disposition and issued a final order dismissing each of the Petitioners' arguments. The Petitioners appeal from the Executive Director's final order.

¶ 2    We dismiss the Petitioners' appeal. Our appellate jurisdiction is restricted by statute to a review of the Executive Director's final order. Yet the Petitioners altogether failed to address their opening brief and arguments to the final order, opting instead to attack only the sufficiency of the actions of the Director of UDAQ. We would be forsaking our judicial role if we were to seek out errors in the final order on behalf of the Petitioners and to the detriment of the Respondents, which is in essence what the Petitioners are asking us to do. Thus, while the Petitioners' substantive arguments may have merit, an issue on which we offer no opinion, we are in no position to ferret

---

[1] For ease of reference, we refer to Utah Physicians for a Healthy Environment and the Utah Chapter of the Sierra Club collectively as the Petitioners, the Director of UDAQ as the Director, the Executive Director of UDEQ as the Executive Director, and Tesoro Refining and Marketing Company as Tesoro.

out the truth because the Petitioners have failed to meet their burden of persuasion on appeal.

¶ 3　The dissent would have us overlook the Petitioners' briefing failure by "step[ping] into the shoes of [the Executive Director] and review[ing] the fact-finder's decisions ourselves." The dissent also suggests that the Petitioners have "briefed at least one potentially meritorious claim that UDAQ erred." There are significant problems with the dissent's views. First, although we often look at the fact-finder's decision to determine whether the intermediate appellate body erred, our jurisdiction is statutorily bound to a review of the Executive Director's decision, which the Petitioners failed to address. The failure to address the Executive Director's decision constitutes inadequate briefing. Second, the Petitioners have failed to show that one of their claims—namely, that UDAQ's "best available control technology" analysis was legally inadequate—is a purely legal one, in part because they do not address the Executive Director's findings of fact and conclusions of law on the issue.

## BACKGROUND

¶ 4　In 2011, Tesoro filed a Notice of Intent (NOI) with UDAQ, requesting permission to modify the "Waxy Crude Processing Project" at Tesoro's Salt Lake City Refinery. As part of this project, Tesoro wished to make changes to several pieces of equipment at the refinery. The equipment in question expels pollutants that are subject to state emissions regulations. In the NOI, Tesoro specified the expected increases in emissions from the refinery attributable to the project and explained the process used to calculate those increased emissions.

¶ 5　Tesoro stated that the increase in emissions for all pollutants but sulfur dioxide ($SO_2$) fell below the emission thresholds that trigger the more rigorous New Source Review program standards. Therefore, the majority of the project would be subject only to UDAQ's minor source permitting program. For $SO_2$, Tesoro had to undertake an analysis to determine whether the total net emissions of $SO_2$ would be greater than the allowable Prevention of Significant Deterioration emission rate and thus trigger the stricter New Source Review program standards. In the NOI, Tesoro indicated that it would install a piece of equipment at its refinery to reduce $SO_2$ emissions. Because of that reduction, Tesoro determined that the net emissions of $SO_2$ would be low enough not to trigger the New Source Review standards. As a result, all the changes to the refinery would be subject only to UDAQ's minor source permitting program rather than to the stricter New Source Review program.

¶ 6    Tesoro also had to determine whether its pollution control technology for the refinery's emissions was at least the best available control technology (BACT).[2] For its BACT determination, Tesoro used a BACT analysis from 2007 that UDAQ had approved for the refinery. Tesoro determined that the technology at the refinery conformed to BACT requirements. It also concluded that its project was not subject to the Environmental Protection Agency's new regulations under Subpart Ja of the New Source Performance Standards.

¶ 7    UDAQ reviewed Tesoro's NOI and issued a Source Plan Review and an Intent to Approve for the project. As required by statute, UDAQ released the NOI, Source Plan Review, and Intent to Approve for a public comment period. The Petitioners filed comments during this period, expressing concern about the legal sufficiency of Tesoro's and UDAQ's analyses regarding the project. After reviewing the comments, UDAQ requested that Tesoro provide additional information, including more BACT analysis. Tesoro complied with this request by filing supplemental information responding to UDAQ's concerns on July 25, 2012. After reviewing all the materials, UDAQ approved Tesoro's project on September 13, 2012. Subsequently, on October 15, 2012, the Petitioners filed a Request for Agency Action to initiate a permit review adjudicative proceeding for the Tesoro project.[3]

¶ 8    On February 15, 2013, the Executive Director appointed an ALJ to preside over the permit review adjudicative proceeding and to issue a recommendation about what, if any, action should be taken by the Executive Director regarding the permit. The ALJ gave the Petitioners additional time and permission to supplement the record because Tesoro's July 25, 2012 supplement was filed after the public comment period had closed. The Petitioners elected not to supplement the record. In addition to the briefing for the permit review adjudicative proceedings, the parties filed a number of written motions

---

[2] In the NOI, Tesoro noted that both Utah and federal law require a BACT analysis "for new emission units and existing emission units where there is a physical modification and an increase in emissions." *See* UTAH ADMIN. CODE r. 307-401-5(d) (requiring "[a]n analysis of best available control technology for the proposed source or modification").

[3] The Request for Agency Action is a request for administrative review of the agency's decision to issue the approval order for the permit. *See* UTAH CODE § 19-1-301.5(5) (2014).

and responses relating to the proceedings, totaling hundreds of pages. After the parties briefed the case, the ALJ heard oral argument for several hours on February 26, 2014.

¶ 9    Once the permit review adjudicative proceedings concluded, the ALJ issued a proposed dispositive action on September 9, 2014. In that proposed dispositive action, the ALJ wrote extensively regarding the Petitioners' failure to preserve arguments and to marshal the evidence.[4] He also wrote about the Petitioners' failure to meet their

---

[4] In his First Prehearing Order, the ALJ instructed that "the party with the burden of proof on any issue will be held to a stringent requirement to marshal all of the applicable evidence, issue by issue, in the Administrative Record." The ALJ further noted that the Petitioners had the burden of proof in the proceeding and that "[w]ithout marshaling all of the record evidence in the first instance, it would be impossible for the [ALJ] to determine whether the disputed issue is or is not supported by 'substantial evidence' in the administrative record." Thus, the ALJ adopted the marshaling requirement as part of his authority under Utah Code section 19-1-301.5(9)(f) (2014).

The Petitioners argue in their reply brief before this court that the preservation and marshaling requirements incorporated by the ALJ through Utah Code section 19-1-301.5 (2014) do not apply to them because they did not become law until May 8, 2012, after the public comment period began on February 21, 2012, and after the Petitioners filed their comments on April 23, 2012. This contention is without merit. The Petitioners fail to acknowledge that UDAQ extended the public comment period until June 7, 2012, "in response to a new law, Utah Code Ann. § 19-1-301.5, which changes the adjudicative proceedings for permits and becomes effective on May 8, 2012." The Petitioners themselves took advantage of this extension by filing additional comments on June 6, 2012. The Petitioners did not challenge the applicability of section 19-1-301.5 before the ALJ or in their opening brief before this court. We also note that this argument is at odds with the Petitioners' jurisdictional basis for the appeal, namely section 19-1-301.5. Finally, statutes like section 19-1-301.5, which are procedural and "enacted subsequent to the initiation of a suit [and] which do not enlarge, eliminate, or destroy vested or contractual rights[,] apply not only to future actions, but also to accrued and pending actions as well." *Pilcher v. State, Dep't of Soc. Servs.*, 663 P.2d 450, 455 (Utah 1983) (citation omitted); *see also Brown & Root Indus. Serv. v. Indus. Comm'n of Utah*, 947 P.2d 671, 675 (Utah 1997); *Roark v. Crabtree*, 893 P.2d 1058, 1062 (Utah
(con't.)

burden of persuasion on the merits. The ALJ held that seven of the Petitioners' arguments in the Request for Agency Action were waived or otherwise failed on the merits because of the Petitioners' failure to address them in the briefing. The ALJ also found that the Petitioners "failed to carry their burden to overcome UDAQ's BACT determination." The Petitioners had the burden to identify an available control technology that UDAQ did not consider in its BACT analysis or to identify a specific emission limitation associated with any control technology, but the ALJ determined that the Petitioners failed to do either. The Petitioners argued that the ALJ should infer that UDAQ's BACT analysis was insufficient because it maintained the status quo of emissions at the refinery, but the ALJ found that the argument was not tied to the specific facts of the case. Instead, the Petitioners relied on a single footnote in their brief consisting of a string of record citations, which the ALJ concluded was wholly insufficient to meet their burden. The ALJ also found that "UDAQ in fact reviewed Tesoro's July 25, 2012 letter" and that it adopted Tesoro's BACT analysis. The reasonable inference from this fact, according to the ALJ, was that "UDAQ was satisfied with Tesoro's BACT analysis" that included the July 25 supplement.

¶ 10 The ALJ further concluded that the Petitioners failed to meet their burden to marshal the evidence. Based on this finding, the ALJ recommended that eleven of their remaining sixteen arguments be dismissed. For three of the remaining five arguments, the ALJ concluded that the Petitioners had failed to adequately preserve their arguments. Despite the Petitioners' failure to preserve their arguments or meet their burden, the ALJ still addressed the merits of most of the arguments, concluding that the arguments failed on their merits as well.

¶ 11 Because the ALJ concluded that the Petitioners had failed to meet their burden, he recommended that the Executive Director dismiss their Request for Agency Action. On November 17, 2014, the Executive Director issued a final order incorporating the ALJ's findings of fact and conclusions of law and adopting the ALJ's recommendation of dismissal. The Petitioners subsequently filed a petition for review of that decision with the Utah Court of Appeals on December 15, 2014.

---

1995); *Salt Lake Child & Family Therapy Clinic, Inc. v. Frederick*, 890 P.2d 1017, 1020 (Utah 1995). Thus, section 19-1-301.5, and all of its requirements, was applicable to the Petitioners' claims.

The court of appeals then certified the case to this court. We have jurisdiction over the appeal pursuant to Utah Code sections 63G-4-403 and 78A-3-102(3)(b).

**STANDARDS OF REVIEW**

¶ 12   Our authority to review final agency adjudications is set forth in part 4 of the Administrative Procedures Act. UTAH CODE § 63G-4-403. Pursuant to that Act, we may grant relief if we determine "that a person seeking judicial review has been substantially prejudiced" (1) by "the agency . . . erroneously interpret[ing] or appl[ying] the law"; (2) by "agency action [that] is based upon a determination of fact, made or implied by the agency, that is not supported by substantial evidence when viewed in light of the whole record before the court"; or (3) by "agency action [that] is: (i) an abuse of the discretion delegated to the agency by statute[,] (ii) contrary to a rule of the agency[,] . . . or (iv) otherwise arbitrary or capricious." *Id.* § 63G-4-403(4)(d), (g), (h). We bear in mind, however, that UDEQ, by statute, "has been granted substantial discretion to interpret its governing statutes and rules." *Id.* § 19-1-301.5(14)(c)(i) (2014).[5] Also, we are required to "uphold all factual, technical, and scientific [UDEQ] determinations that are supported by substantial evidence viewed in light of the record as a whole." *Id.* § 19-1-301.5(14)(c)(ii) (2014).

¶ 13   In this case, the burden of persuading us that these standards have been met falls squarely on the Petitioners. As explained below, the Petitioners have failed to meet this burden on appeal.

**ANALYSIS**

¶ 14 The first problem with the Petitioners' challenge to the Executive Director's final order is the manner in which the Petitioners chose to brief this matter. Both UDEQ and Tesoro call our attention to the fact that the Petitioners, in their opening brief, "fail[] to rebut any finding or conclusion in the [Executive Director's] [f]inal [o]rder." The Petitioners instead attack the actions of the Director of UDAQ, claiming that the Director's BACT analysis was legally insufficient. As a result of the Petitioners' failure to address the Executive Director's final order

---

[5] Throughout this opinion, we often cite to the previous version of this statute, the same version the parties cite to in their briefs. This statute was amended in 2015, with the changes taking effect in May 2015. *See* UTAH CODE § 19-1-301.5. With respect to the provisions at issue in this appeal, the changes are not substantive.

in their opening brief, UDEQ and Tesoro claim that the Petitioners "cannot meet [their] burden on appeal and [that] this [c]ourt should affirm the [Executive Director's] [f]inal [o]rder" or "dismiss [the] Petitioners' appeal."[6]

¶ 15 In addition, UDEQ and Tesoro both move to strike large portions of the Petitioners' reply brief that address the Executive Director's final order because they violate rule 24(c) of the Utah Rules of Appellate Procedure. Specifically, UDEQ and Tesoro claim that the Petitioners' reply brief violates rule 24(c) because it "raise[s] new issues and attempt[s] to cure legal deficiencies in [its] [o]pening [b]rief" by addressing its arguments to the Executive Director's final order. The Petitioners counter that they are merely responding to new matters set forth in UDEQ's and Tesoro's reply briefs, that the issues are jurisdictional and may be raised at any time, and that the arguments are merely a "recharacterization of the issues . . . set[] forth in [their] [o]pening [b]rief." The Petitioners thus claim that we may appropriately consider all of the arguments contained in their reply brief.

¶ 16 We hold that the Petitioners' failure to appropriately address their opening brief and arguments to the Executive Director's final order is fatal to their claim. Because the Petitioners failed to address the Executive Director's final order and its incorporation of the ALJ's findings, choosing instead to attack the Director's actions, the Petitioners failed to meet their burden of persuasion on appeal. Ignoring this failure would, among other problems, require the court to comb through the record to ascertain whether an argument or a piece of evidence was presented to the ALJ, which would turn the court into the Petitioners' advocate and deprive UDEQ and Tesoro of a fair appeal. In addition, the attempt to address portions of the Executive Director's final order for the first time in the Petitioners' reply brief is improper and prohibited. Therefore, we grant Tesoro's and UDEQ's motions to strike portions of the Petitioners' reply brief. Furthermore, as a consequence of the Petitioners' briefing failures, we do not reach the merits of the Petitioners' arguments, and we dismiss the appeal.

---

[6] We note that the Petitioners have complied with the requirements of Utah Code section 19-1-301.5(14)(a) (2014) by appealing the Executive Director's final order, thereby technically satisfying the jurisdictional requirements of the statute. But, as discussed below, this technical compliance does not absolve the Petitioners of their burden of persuasion on appeal.

*A. The Petitioners Failed to Properly Challenge the
Executive Director's Final Order in Their Opening Brief and
Thus Failed to Meet Their Burden of Persuasion on Appeal*

¶ 17 Under Utah Code section 19-1-301.5(14)(a) (2014), "[a] party may seek judicial review . . . of a dispositive action in a permit review adjudicative proceeding, in accordance with Section[] . . . 63G-4-403." "Dispositive action" is defined in the statute as "a *final* agency action that: (i) the executive director takes as part of a permit review adjudicative proceeding; and (ii) is subject to judicial review, in accordance with Subsection (14)." UTAH CODE § 19-1-301.5(1)(a) (2014) (emphasis added). To succeed on appeal, the Petitioners must take issue with and demonstrate error in a *final* agency action under the standards of review set forth above. And they must do so in their opening brief. *See Allen v. Friel*, 2008 UT 56, ¶ 8, 194 P.3d 903 ("It is well settled that 'issues raised by an appellant in the reply brief that were not presented in the opening brief are considered waived and will not be considered by the appellate court.'") (citation omitted); *see also infra* ¶¶ 21–24.

¶ 18 Here, the Petitioners mention the Executive Director's final order in their opening brief only once, as part of their assertion that the "[f]inal [o]rder is owed no deference."[7] In their opening brief, the

---

[7] While the question of whether deference is owed to the Executive Director is more appropriately viewed as a question regarding the appropriate standard of review, which we have already laid out above, *supra* ¶ 12, we take the time to address the assertion by the Petitioners and the dissent that the Executive Director is owed no deference. *See infra* ¶¶ 52–53. The question of whether deference is owed to the Executive Director "depends on the type of [agency] action in question." *Murray v. Utah Labor Comm'n*, 2013 UT 38, ¶ 22, 308 P.3d 461. For questions of law, "the question . . . has a single 'right' answer" and we afford the agency no deference on such questions. *Id.* ¶ 33. However, for mixed questions of law and fact, "we sometimes afford deference to [an agency's] decision as a matter of institutional competency." *Id.* And "[f]indings of fact are entitled to the most deference." *In re Adoption of Baby B.*, 2012 UT 35, ¶ 40, 308 P.3d 382. We agree with the dissent that we often "must step into the shoes of the intermediate appellate court or tribunal and review the fact-finder's decisions ourselves under the appropriate standard of review." *Infra* ¶ 52.

However, the fact that we may or may not grant deference to the

(con't.)

Petitioners instead argue that this court should "undertake an independent evaluation of the Director's permitting decision based on the administrative record." The Petitioners technically appealed the Executive Director's final order, but that technical compliance is not enough. The Petitioners must actually address the alleged errors in the Executive Director's final order in their opening brief. Section 63G-4-403 authorizes us to review only a *final* agency action—in this case, the Executive Director's final order. By failing to address the final order in their opening brief, the Petitioners made a review of the final order impossible:

> In an instance where the court has appellate jurisdiction, an appellant must allege the lower court committed an error that the appellate court should correct. If an appellant does not challenge a final order of the lower court on appeal, that decision will be placed beyond the reach of further review. If an appellant fails to allege specific errors of the lower court, the appellate court will not seek out errors in the lower court's decision. In general, if a defendant has not raised an issue on appeal, [an appellate court] may not consider the issue sua sponte.

*Allen*, 2008 UT 56, ¶ 7 (alteration in original) (citation omitted) (internal quotation marks omitted).[8]

---

Executive Director is beside the point. At issue here is not whether we owe deference to the Executive Director, but whether the Petitioners have met their burden of persuasion on appeal. By statute, the Petitioners have the burden to point us to errors in the Executive Director's final order specifically. The Petitioners fail to direct us to errors contained in the Executive Director's final order, and we cannot search for errors on Petitioners' behalf. *See State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820.

    [8] We disagree with the dissent as to whether the procedural posture here, versus in *Allen v. Friel*, 2008 UT 56, 194 P.3d 903, offers any sort of meaningful distinction. *See infra* ¶¶ 60–63. We note that the level of appellate deference did not affect our holding in *Allen* as we dismissed the appellant's challenges not just to the lower court's factual findings but also to the lower court's legal conclusions, which we reviewed "for correctness without deference to the lower court." *Allen*, 2008 UT 56, ¶ 5.

(con't.)

¶ 19 We will not seek out errors in the Executive Director's final order, which was the Petitioners' burden on appeal, when the Petitioners have failed to properly and adequately do so. The Petitioners were required to support their contention that we should overturn the Executive Director's decision to dismiss their challenge to the Director of UDAQ's approval of the Tesoro project. As part of their burden of persuasion, the Petitioners were required, in their opening brief, to indicate the specific parts of the Executive Director's final order they believed were incorrect and present supporting evidence. They completely failed to do so, and an appellant may not thereby "dump the burden of argument and research" on the appellate court. *State v. Green*, 2004 UT 76, ¶ 13, 99 P.3d 820 (internal quotation marks omitted).

¶ 20 Furthermore, a party fails to marshal at its own peril. *See State v. Nielsen*, 2014 UT 10, ¶ 41, 326 P.3d 645 (reaffirming "the traditional principle of marshaling as a natural extension of an appellant's burden of persuasion"). While we recently rejected the concept that a "technical deficiency in marshaling" would result in a "default," we reiterated that without marshaling, a party "will almost certainly fail to carry its burden of persuasion on appeal." *Id.* ¶¶ 41–42; *see also State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226 (stating that "like the marshaling requirement . . . our adequate briefing requirement is not a 'hard-and-fast default notion," but that "appellants who fail to follow [the briefing] requirements will likely fail to persuade the court of the validity of their position") (internal quotation marks omitted). The marshaling requirement we discuss here was a "natural extension of [the Petitioners'] burden of persuasion," and without it they cannot hope to convince us that the Executive Director's final order was faulty. *Roberts*, 2015 UT 24, ¶ 18 (internal quotation marks omitted). Thus, we hold that the failure of the Petitioners to marshal the evidence in support of their arguments in their opening brief represents "a necessary component of our evaluation of the case." *Id.* (internal quotation marks omitted). The Petitioners failed to meet this burden because they did not address their opening brief to the Executive Director's final order.

---

We also note that while the appeal characterizes both the Executive Director's and ALJ's decisions as "intermediate appellate decisions," the ALJ enjoys certain powers more characteristic of a trial-level tribunal. *See* UTAH CODE § 19-1-305.1(11)(a) (authorizing fact-finding by the ALJ).

¶ 21 The dissent suggests that the Petitioners were not on "notice that [their] appeal would not be resolved on the merits" because we do not cite rule 24 of the Utah Rules of Appellate Procedure for the proposition that the Petitioners were required to address their opening brief to the Executive Director's final order. *Infra* ¶ 59. We need not rely on rule 24 to put the Petitioners on notice of their duty to address the intermediate appellate decision, because "[w]e have long held that we have discretion to not address an inadequately briefed argument." *Angel Inv'rs, LLC v. Garrity*, 2009 UT 40, ¶ 35, 216 P.3d 944.[9] And

---

[9] The plain language of Utah Code section 19-1-301.5(14)(a) informed the Petitioners that they could seek judicial review only of a dispositive agency action. By appealing the Executive Director's final order, the Petitioners clearly indicated that they understood that their appeal was predicated upon that order. And all parties are certainly on notice that they must meet their burden of persuasion to convince the appellate court to rule in their favor on appeal. *See, e.g.*, *id.* § 63G-4-403. Yet despite their understanding that their appeal was tied to the Executive Director's final order, the Petitioners do not address that final order in their opening brief beyond the assertion that it is "owed no deference."

As a result, the Petitioners fail to convince us that the final order contains reversible error. The Petitioners' failure to meet their burden of persuasion is inextricably connected to the way they chose to brief this case before the court. *See State v. Roberts*, 2015 UT 24, ¶ 19, 345 P.3d 1226 ("[O]ur adequate briefing requirement is not a 'hard-and-fast default notion.' Instead, it is a 'natural extension of an appellant's burden of persuasion.'" (citations omitted)). The Petitioners' inadequate briefing resulted in an improper "statement of the issues presented for review" and of "the standard of appellate review." UTAH R. APP. P. 24(a)(5). We have held that we have discretion in determining compliance with the "standard for adequate briefing," and "we assess the adequacy of a brief not as a matter of gauging procedural compliance with the rule, but as a necessary component of our evaluation of the case on its merits." *Roberts*, 2015 UT 24, ¶ 18 (internal quotation marks omitted). Therefore, the Petitioners were clearly on notice that their appeal was tied to the dispositive agency action, and their appeal indicates that they understood the dispositive agency action to be the Executive Director's final order. *See* UTAH CODE § 19-1-301.5(14).

Furthermore, the Petitioners were clearly on notice that on appeal they would be required to meet their burden of persuasion to convince

(con't.)

contrary to the dissent's assertion, this is not the first time we have refused to consider briefing that fails to grapple with an intermediate appellate body's decision.[10]

¶ 22   In *Butterfield v. Okubo*, we chided the appellants, whose brief had only a "sole complaint about the court of appeals' decision" and mostly "attack[ed] the actions of the district court." 831 P.2d 97, 101 n.2 (Utah 1992). After lamenting the occasions where "the briefs filed with this court appear to be only copies of those originally filed with the court of appeals," we reiterated the scope of our jurisdiction in no uncertain terms: "[T]he briefs of the parties should address the decision of the court of appeals, not the decision of the trial court. To restate the matter: We do not grant certiorari to review *de novo* the trial court's decision." *Id.* But in *Butterfield*, unlike in the case at hand, the appeal did not warrant dismissal because the appellants did raise one

---

us that there was reversible error in the dispositive agency action. *See id.*; *see also id.* § 63G-4-403. The Petitioners understood the Executive Director's final order to be the dispositive agency action in this case, and they cannot escape their burden of persuasion to convince us that the final order contains reversible error by arguing the final order is owed no deference. *See State v. Roberts*, 2015 UT 24, ¶ 18, 345 P.3d 1226 (noting that adequate briefing requirement is a "natural extension of an appellant's burden of persuasion") (internal quotation marks omitted); *see also* UTAH CODE § 63G-4-403(4) (appellant's burden to show prejudice in appeal of final agency action). The dissent does not dispute that a party "may [not] dump the burden of argument and research" on the appellate court. *Green*, 2004 UT 76, ¶ 13 (citation omitted). And this is precisely what the Petitioners have done by failing to address the Executive Director's final order in their opening brief. Thus, regardless of rule 24's briefing requirements, it is evident based on our case law and the statutory basis for the Petitioners' appeal that the Petitioners were on notice that they would be required to address the Executive Director's final order in their opening brief.

[10] In effect, we hold that an appellant's failure to grapple with an intermediate appellate review will often be fatal due to lack of preservation. As the dissent admits, "[a]ppellants cannot prevail in this court on an issue they did not raise or did not adequately raise in an intermediate appeal." *Infra* ¶ 55.

argument of error from the court of appeals, so we properly addressed only that issue on appeal. *Id.* at 101.

¶ 23 A similar issue arose in *Allen v. Utah Department of Health, Division of Health Care Financing*, 850 P.2d 1267 (Utah 1993). In *Allen*, the petitioner had appealed a final agency decision by the Utah Department of Health, Division of Health Care Financing to the court of appeals, which ruled against him, and then appealed to this court. *Id.* at 1268. In his statement of issues on appeal to us, the petitioner "attack[ed] [the department's] actions" as well as the actions of the court of appeals. *Id.* at 1269 n.4. But the petitioner's error in *Allen* was not fatal, because he specifically addressed the reasoning of the court of appeals in his brief. We reiterated that we would address the issues regarding the decision of the intermediate court but not review the fact-finding body's decision de novo. *Id.* We therefore appropriately addressed only the petitioner's arguments directed toward the court of appeals' decision.

¶ 24 The Petitioners in this case have no such saving grace because they have failed to address the intermediate decision in any part of their argument. They have not raised even a "sole complaint" about the intermediate decision. And we will not exceed the bounds of our jurisdictional authority to do so for them.

¶ 25 Nevertheless, the dissent argues that we should reach the merits to answer the question of whether UDAQ's BACT analysis was legally inadequate. The dissent views this as a question of "legal adequacy of the analysis employed by UDAQ, not the absence of evidence to support its conclusions." *Infra* ¶ 57. However, the Petitioners have not met their burden to support that conclusion. Instead, the argument here is factual.

¶ 26 The Petitioners first claim that the BACT analysis was legally inadequate based on assertions for which they fail to provide factual support. Specifically, the Petitioners assert that UDAQ did not include the July 25 supplement in its analysis and that the BACT analysis used by UDAQ was too old to be sufficient. This unsupported factual assertion is directly contradicted by the Executive Director's finding that "UDAQ intended to adopt, and did adopt, as its own analysis, [the July 25 supplement]," a finding that the Petitioners completely ignore in their opening brief.[11] The ALJ also noted that UDAQ approved the

---

[11] The Petitioners objected to the July 25 supplement for the first time at oral argument before the ALJ. The July 25 supplement was

(con't.)

project only after receiving the July 25 supplement and that it properly included the additional information from the supplement. This finding by the ALJ likewise directly contradicts the Petitioners' legal assertions, yet it also goes unmentioned in the Petitioners' brief. The Petitioners' brief is silent as to any argument about why the Executive Director erred in finding that the Petitioners did not provide sufficient evidence, as well as to what level of scrutiny should apply to the Executive Director's findings of fact and conclusions of law. This leaves the Petitioners' opening brief woefully inadequate.

¶ 27  The Petitioners' second argument regarding legal inadequacy also fails for lack of support. The Petitioners claim that the analysis based on the 2006 BACT emissions limitations was "on its face . . . improper" but justify this claim with only guesswork, stating that "there is insufficient evidence . . . to determine just how out of date the 2006 analysis is." A party may not "support" its claim that an argument is one of legal sufficiency simply by ignoring evidence or an ALJ finding to the contrary. The Petitioners may have intended to make a legal argument about the sufficiency of the BACT analysis, but instead they made only legal conclusions. Not surprisingly, we are far from the first court to require that parties adequately brief issues on appeal. *See, e.g., Thummel v. King*, 570 S.W.2d 679, 686 (Mo. 1978) (en banc) (refusing to consider an argument where the party "[did] not state [in the briefing where] and why the trial court erred"). We share the same concern as the Missouri Supreme Court in *Thummel*:

> When counsel fail in their duty by filing briefs which are not in conformity with the applicable rules and do not sufficiently advise the court of the contentions asserted and the merit thereof, the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency. Courts should not be asked or

---

added after the public comment period had ended, so the ALJ "opened the administrative record . . . to allow Petitioners the opportunity to submit any additional evidence . . . [and] make any and all legal arguments regarding the substance of the BACT analysis." The Petitioners chose not to do so, and the ALJ found that even at oral argument, the Petitioners failed to offer specific evidence in objection to the July 25 supplement.

expected to assume such a role. In addition to being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals.

*Id.* If we were to ignore the Petitioners' error and supplement the Petitioners' inadequate brief with our own research and arguments, we would be abandoning our proper judicial function. This concern about proper judicial function is one of the reasons why a party "may [not] dump the burden of argument and research" on the appellate court. *Green*, 2004 UT 76, ¶ 13 (internal quotation marks omitted).

*B. The Attempts by the Petitioners to Cure the Deficiency in Their Opening Brief by Addressing Portions of the Executive Director's Final Order in Their Reply Brief and by Claiming the Deficiency Was "Harmless Error" Are Unavailing*

¶ 28   The attempts by the Petitioners to overcome the error in their opening brief are unsuccessful. First, the Petitioners try to address portions of the Executive Director's final order in their reply brief. Second, they attempt to overcome their briefing error at oral argument by insinuating that their opening brief's deficiency was "harmless error."

¶ 29   The Petitioners first try to address portions of the final order in their reply brief, claiming that they are allowed to do so for three reasons: (1) they are merely responding to new matters set forth in UDEQ's and Tesoro's reply briefs, (2) the issues are jurisdictional and may be raised at any time, and (3) the arguments are merely a "recharacterization of the issues . . . set[] forth in [their] [o]pening [b]rief." Each of these contentions, however, is incorrect.

¶ 30   The first contention fails because Tesoro and UDEQ's pointing out that the Petitioners failed to address the Executive Director's final order in their opening brief is not a "new matter" under rule 24(c) of the Utah Rules of Appellate Procedure. *See State v. Kruger*, 2000 UT 60, ¶ 21, 6 P.3d 1116. Therefore, the fact that Tesoro and UDEQ highlighted that inadequacy does not entitle the Petitioners to address the Executive Director's final order in their reply brief. *See id.* Furthermore, given our previous pronouncement that "[a]ppellees who rely solely on inadequate briefing arguments . . . assume a considerable risk of defaulting on appeal" and the Petitioners' complete failure to challenge the Executive Director's final order in their opening brief, UDEQ and Tesoro were forced in their responsive briefs to address the multiple

grounds upon which the Executive Director rejected the Petitioners' claims in the final order. *Roberts*, 2015 UT 24, ¶ 19. Had they not done so, UDEQ and Tesoro would have risked "that we would disagree with [their] assessment of the adequacy of [the Petitioners'] briefing and thereby forfeit [their] chance to respond to the merits of [the Petitioners'] claims." *Id.* ¶ 20. Therefore, we will neither fault UDEQ or Tesoro for complying with their briefing obligations nor reward the Petitioners for their failure to comply with their briefing obligations, by considering the Petitioners' arguments in their reply brief that deal with the Executive Director's final order for the first time on appeal. To hold otherwise would turn the briefing process on its head.

¶ 31   The Petitioners' second contention, characterizing the issue as one of "subject matter jurisdiction," is also erroneous. In their responsive briefs, Tesoro and UDEQ did not claim that this court lacked subject matter jurisdiction over the Petitioners' appeal. Instead, they argued that the Petitioners had failed to meet their burden on appeal by failing to address their opening brief to the Executive Director's final order. Therefore, the Petitioners' contention that the issues are jurisdictional is based on a false premise and is incorrect.

¶ 32   Finally, the attempt by the Petitioners to address the Executive Director's actions for the first time in their reply brief is not a mere "recharacterization of the issues . . . set[] forth in [their] [o]pening [b]rief." This oversight is not merely a matter of word choice. The Petitioners' opening brief addresses only the Director's actions; the Executive Director's final order is merely mentioned once. The Director's actions were litigated before the ALJ, and now, on appeal, we are to consider the Executive Director's final order, which incorporated the findings of the ALJ. This court does not "go back" to before the final order and before the ALJ's findings and conclusion and reconsider the actions of the Director, *see supra* ¶ 18 n.7; rather, we concern ourselves with what errors, if any, the Executive Director made in the final order.[12] We cannot determine whether there are errors in that final

---

[12] We note that a line of cases regarding appellate review of a district court's judgment in an administrative decision seems at first glance to take a different tack. These cases state that "[w]hen a district court's review of an administrative decision is challenged on appeal and the district court's review was limited to the record before the board, we review the administrative decision just as if the appeal had come directly from the agency." *Wells v. Bd. of Adjustment of Salt Lake City Corp.*, 936 P.2d 1102, 1104 (Utah Ct. App. 1997) (internal quotation

(con't.)

marks omitted); *see also Fuller v. Springville City*, 2015 UT App 177, ¶ 11, 355 P.3d 1063. *But see BMS Ltd. 1999, Inc. v. Dep't of Workforce Servs.*, 2014 UT App 111, ¶ 5 n.2, 327 P.3d 578 (limiting the court of appeals' review to the final agency action and reviewing the underlying decision "only to the extent that the [agency] relied upon it").

We distinguish our holding today in several ways. First, Utah Code section 63G-4-403 expressly limits our review to the final agency action. We "do not enjoy unlimited power to review the actions of . . . administrative agencies" because "[t]he scope of appellate court authority is bounded by . . . statutory grants of jurisdiction." *State v. Lara*, 2005 UT 70, ¶ 10, 124 P.3d 243.

Second, the cases about appellate review of a district court's judgment in an administrative decision stem from our holding in *Bennion v. Utah State Board of Oil, Gas & Mining*, where we clarified that when reviewing agency actions, we extend no deference to the intermediate body only in cases where "the lower court's review of the administrative record is not more advantaged than the appellate court's review." 675 P.2d 1135, 1139 (Utah 1983). But our case today is not one where the issue of expertise would pit judge against judge, where both are in an equal position to make a determination. Rather, we are reviewing the decision of the Executive Director, whose technical expertise is reflected in the statute regarding permit review adjudicative proceedings. *See* UTAH CODE § 19-1-301.5(13)(e) (2014) ("The executive director may use the executive director's technical expertise in making a determination."). This deference is also reflected in our test for reviewing mixed questions of law and fact, where we consider

> (1) the degree of variety and complexity in the facts to which the legal rule is to be applied; (2) the degree to which a trial court's application of the legal rule relies on "facts" observed by the trial judge[;] . . . and (3) other "policy reasons that weigh for or against granting [deference] to trial courts."

*Murray*, 2013 UT 38, ¶ 36 (second alteration in original) (citation omitted). Although the second factor does not apply in this case, the first and third factors weigh strongly in favor of providing deference to the agency because "technical[] and scientific" determinations provide much of the basis for the executive director's decision. *See* UTAH CODE § 19-1-301.5(14)(c)(ii) (2014).

Third, regardless of how much deference we extend, any issue still

(con't.)

order based on the Petitioners' opening brief because it altogether fails to address the final order except for stating that the "[f]inal [o]rder is owed no deference." Therefore, the attempts by the Petitioners to address the Executive Director's final order in their reply brief "were not presented in the opening brief [and] are considered waived and will not be considered by [this court]." *Allen*, 2008 UT 56, ¶ 8 (internal quotation marks omitted).

¶ 33 For these reasons, we conclude that UDEQ's and Tesoro's motions to strike portions of the Petitioners' reply brief are well taken and grant the motions to strike the sections that address the Executive Director's final order for the first time. Those sections include Parts II.A, II.B, III.E, III.F, III.G, III.H, IV.B, V, and VI. We determine that the remaining sections Tesoro moved to strike are rendered moot, and thus we do not address them.

¶ 34 After their attempt to overcome their briefing error by addressing the final order in their reply brief, the Petitioners made a second attempt to overcome their briefing error, this time by insinuating at oral argument that their opening brief's deficiency was "harmless error." At oral argument, the Petitioners insisted that even if they did not address the Executive Director's final order in their opening brief, they met their burden by showing that the Director's actions were invalid, arguing that "any decision upholding an invalid decision must be invalid." But the Petitioners' error was not "harmless."[13]

---

must be preserved at both the fact-finding and intermediate appellate levels. *See Fuller*, 2015 UT App 177, ¶ 14 (declining to reach an argument that was presented to the district court but not the agency). Here, the ALJ determined that the Petitioners failed to preserve seven of their arguments at the intermediate level; they may not resurrect those claims now. We note that even the dissent agrees that for us to properly reach an issue, it must have been passed through at each level below. *See infra* ¶ 55 ("Appellants cannot prevail in this court on an issue they did not raise or did not adequately raise in an intermediate appeal.").

[13] The dissent appears to adopt this "harmless error" formulation of the Petitioners' argument. *See infra* ¶ 58 ("Because the ALJ performed the function of an appellate court, these two formulations of [the Petitioners'] argument are functionally the same."). We cannot agree

(con't.)

¶ 35 Before the appeal reached this court, the Director of UDAQ issued an approval order for the Tesoro project, and that decision was subject to nearly two years of litigation, which involved over 350 pages of briefing and several hours of oral argument and resulted in a 4,500-page record. Based on these proceedings, the ALJ issued a 102-page recommendation, which was incorporated into the Executive Director's final order. Tesoro has a valid concern that all of this previous litigation would be rendered meaningless if the Petitioners were permitted to "go back" and argue over the Director's initial actions regarding the permitting decision. Those issues have already been litigated before the ALJ. The question on appeal is what errors, if any, the Executive Director made in the final order, which incorporated the ALJ's findings. The Petitioners may not merely ignore all the previous litigation on the basis of its assertion that the Executive Director's "[f]inal [o]rder is owed no deference." As Tesoro indicated, UDEQ and Tesoro were "entitled" to be presented with the specific arguments that the Petitioners believed were incorrect from the ALJ's findings as incorporated into the Executive Director's final order. In fact, this was exactly what the Petitioners' burden was on appeal. Tesoro correctly observed that "[a]ll of the legal and factual findings upon which the

---

with the dissent's characterization of this issue. Once again, the Petitioners' burden of persuasion on appeal was to show reversible error in the dispositive agency action. *See* UTAH CODE §§ 19-1-301.5(14)(a) (2014), 63G-4-403. Instead, the Petitioners failed to address the dispositive agency action, the Executive Director's final order, other than asserting that it was "owed no deference." As stated above, the level of deference owed to the Executive Director's final order does not address the question of whether there is reversible error in the final order, which is necessary for us to be able to find in the Petitioners' favor. *See supra* ¶ 18 n.7. And the dissent omits crucial context when noting that "[t]he correctness of the [intermediate appellate body's] decision turns, in part, on whether it accurately reviewed the [fact-finding] court's decision." *Infra* ¶ 52 (quoting *Yuanzong Fu v. Rhodes*, 2015 UT 59, ¶ 12, 355 P.3d 995). In *Levin*, we prefaced that quote with a reminder that "we review for correctness the decision of the [intermediate appellate body], not the decision of the [fact-finding] court." 2006 UT 50, ¶ 15. Therefore the Petitioners' arguments regarding error by the Director were not "functionally the same" as arguing that there was reversible error in the dispositive agency action. Consequently, the dissent's characterization of this issue cannot stand.

Executive Director relied to reject [the] Petitioners' claims were clearly stated in the [f]inal [o]rder. If [the] Petitioners wanted to challenge those findings, it was fundamentally incumbent upon [the] Petitioners to identify those findings and argue how those findings were in error[] in their [o]pening [b]rief."

¶ 36 By failing to engage with the Executive Director's incorporation of the ALJ's findings, the Petitioners fail to meet their burden of persuasion because there is no way for us to determine what the alleged errors of the final order are when those errors have not, in fact, been alleged, and absent such errors we cannot rule in the Petitioners' favor.[14] Instead, the court is left to wonder what issue the Petitioners may have had with the ALJ's findings as incorporated by the Executive Director's final order. We agree with UDEQ and Tesoro that the Petitioners cannot meet their burden of persuasion on appeal by addressing the Director's actions rather than the Executive Director's final order.

¶ 37 In addition, the court cannot overlook the Petitioners' failure because this would require the court to review the entire record, see what arguments were made in the Petitioners' opening brief, ensure that the same arguments were made before the ALJ, and ensure that the same evidence was shown to the ALJ. Not only would this be a major disadvantage to the Respondents, who would have no idea what findings the court is reviewing, but as stated above, the Petitioners "may [not] dump the burden of argument and research" on the appellate court. *Green*, 2004 UT 76, ¶ 13 (internal quotation marks omitted).

¶ 38 Therefore, the Petitioners' "harmless error" argument also must fail because the Petitioners' failure to engage with the ALJ's findings as incorporated by the Executive Director's final order is a

---

[14] The dissent characterizes our opinion as requiring the Petitioners to address the ALJ's decision. *See infra* ¶ 51. However, we focus on more than just the Petitioners' failure to address the ALJ's decision in and of itself. Instead, the extent to which we criticize the Petitioners for failing to address the ALJ's decision is predicated upon the Executive Director's adopting the ALJ's findings and incorporating them into her final order. Utah Code section 19-1-301.5(14)(a) (2014) permits a party to seek judicial review of a dispositive action, and no party disputes that the dispositive action in this case is the Executive Director's final order, including its incorporation of the ALJ's findings.

complete failure to meet their burden of persuasion. The Director's actions were beyond the reach of direct review once the proceedings before the ALJ concluded and the Executive Director issued her final order. Instead, the Petitioners' burden was to engage with the ALJ's findings as incorporated in that final order and direct the court to the errors, if any, therein. Absent such an exercise by the Petitioners, this court is forced to dismiss their appeal because it cannot seek out such errors on the Petitioners' behalf.

## CONCLUSION

¶ 39   Because the Petitioners did not address alleged deficiencies in the Executive Director's final order in their opening brief, choosing instead to attack the actions of the Director, they failed to meet their burden of persuasion on appeal. The Petitioners may not address the Executive Director's final order in their reply brief for the first time, and the failure to address that final order was not "harmless error." Thus, we dismiss the Petitioners' appeal. In so doing, we emphasize that we are not considering the merits of the Petitioners' arguments and that nothing in this opinion should be interpreted as affirming or endorsing the actions of UDAQ or UDEQ based on the substance of the arguments made.

———————

JUSTICE DURHAM, dissenting:

¶ 40   I respectfully dissent from the majority opinion's conclusion that the opening brief submitted by Utah Physicians for a Healthy Environment and the Utah Chapter of the Sierra Club (collectively, Utah Physicians) is so deficient that this court should not address the merits of any of the arguments it raises. In order to provide context, I first review the relevant procedural history of this case.

¶ 41 On December 21, 2011, Tesoro Marketing and Refining applied for authorization from the Utah Division of Air Quality (UDAQ) to modify and expand its oil refining facility near Salt Lake City. The proposed expansion would increase the amount of air pollutants emitted by the refinery. Because of this anticipated increase to emission levels, Tesoro was required to include a "best available control technology" (BACT) analysis in its application. UTAH ADMIN. CODE r. 307-401-5(2)(d) (2015).

¶ 42 "'Best available control technology' means an emissions limitation (including a visible emissions standard) based on the maximum degree of reduction for each air pollutant which would be emitted from any proposed stationary source or modification which the

director, on a case-by-case basis, taking into account energy, environmental, and economic impacts and other costs, determines is achievable for such source or modification through application of production processes or available methods, systems, and techniques . . . ." *Id.* r. 307-401-2(1)(d). A BACT analysis is a multistep process whereby the reviewing agency (1) "identif[ies] all available control technology options for the proposed facility for each regulated pollutant"; (2) "eliminates technically infeasible options"; (3) ranks the remaining control technologies "by their effectiveness"; and (4) "analyzes the economic, environmental, and energy impacts, both beneficial and adverse, beginning with the first ranked technology," eliminating the technology if it is deemed "to be inappropriate for the facility." *Utah Chapter of the Sierra Club v. Air Quality Bd.*, 2009 UT 76, ¶ 4 n.2, 226 P.3d 719. The top-ranked technology that is not eliminated under step four is the BACT standard for the facility. *Id.*

¶ 43   Tesoro did not include a full BACT analysis in its application. Instead, it briefly noted that UDAQ had conducted a BACT analysis approximately five years earlier for the unit that would be modified. Tesoro proposed that the approved emission control technologies from the five-year-old analysis should be accepted as BACT for the new project.[15]

¶ 44 Utah regulations require UDAQ to confirm that refinery modifications meet the BACT standard. UTAH ADMIN. CODE r. 307-401-

---

[15] In pertinent part, Tesoro's BACT analysis states:

Tesoro has conservatively considered BACT for the [fluidized catalytic cracking unit (FCCU)] for emissions of particulate (PM10/PM2.5), NOx, and SO2 since there is expected to be an increase in actual emissions associated with the Project. A BACT analysis was recently conducted (2007) for the FCCU as part of the minor modifications to the FCCU to improve reliability (N0335-028). Continued operation of the ESP was selected as BACT for SO2 emissions. The use of additional necessary SOx reducing catalyst to meet NSPS limits was selected as BACT for particulate emissions. Additional NOx control equipment would not be economically feasible; therefore Tesoro will continue to comply with its NOx emission limit. Tesoro proposes to continue using these control technologies as BACT for the FCCU.

8(1)(a) (2015). An engineer for UDAQ reviewed Tesoro's application and purported to conduct UDAQ's BACT analysis. Once again, UDAQ did not follow the steps of a BACT analysis. The engineer merely repeated the conclusions from Tesoro's analysis, and recommended that existing control technologies be accepted as BACT. On February 16, 2012, UDAQ adopted the engineer's recommendations and issued a formal "Intent to Approve" Tesoro's application for public review. [16]

¶ 45 During the public comment period for the application, Utah Physicians submitted several comments in opposition to the proposed refinery expansion. It argued that UDAQ's BACT analysis was inadequate because it relied upon a BACT examination that was over five years old and provided no updated analysis. Utah Physicians asserted that without any assessment of the efficacy or feasibility of current technologies, it was impossible to determine whether the proposed expansion met the BACT standard. After the close of the comment period, UDAQ sent a letter to Tesoro stating that it had received extensive comments regarding the application's reliance upon a prior BACT analysis and requesting "additional information and justification for Tesoro's conclusions." About a week later, on July 25, 2012, Tesoro submitted an updated BACT analysis that included "a review of more recent BACT determinations, updated control cost estimates, and an expanded evaluation of technically feasible control technologies." Tesoro's updated BACT analysis was nineteen pages long. It followed the required steps of a BACT analysis, examining the efficacy of various available control technologies and expressing

---

[16] In pertinent part, UDAQ's February 16 BACT analysis concludes:
Tesoro has conservatively considered BACT for the emissions of particulate . . . [for the proposed expansion] as there is expected to be an increase in actual emissions associated with this project. UDAQ agrees that continued operation of the ESP, use of the SOx reducing catalyst, and installation of a tail gas treatment unit (TGTU) at the existing SRU/TGI shall be considered BACT for this project. Tesoro shall continue to comply with its established source-wide emissions caps for these pollutants. . . . The [New Source Review] section recommends that these control methodologies be accepted as BACT.

Tesoro's opinion regarding which technologies were economically feasible and which were not.

¶ 46 UDAQ subsequently issued an official response to all of the comments and submissions provided by Utah Physicians and Tesoro. The response did not contain a revised BACT analysis performed by UDAQ. Indeed, in response to Utah Physicians' criticism that UDAQ had not performed an adequate BACT analysis, UDAQ stated that its BACT review for the proposed project was "addressed by the current source plan reviews," i.e., its February 16 analysis. In response to Tesoro's updated July 25 BACT analysis, UDAQ stated that the "emitting units included in the current project were adequately addressed in Tesoro's [December 21, 2011 application], and sufficient information was provided for the UDAQ to properly review." Thus, it does not appear in UDAQ's response that the July 25 submission was part of its review.

¶ 47 UDAQ then issued its official approval order for the project. UDAQ attached a rather terse BACT analysis to the approval order that was functionally identical to its February 16 BACT review. The attached BACT analysis consisted of three conclusory sentences:

> Tesoro has conservatively considered BACT for the emissions of particulate (PM10/PM2.5), NOx and SO2 as there is expected to be an increase in actual emissions associated with this project. UDAQ agrees that continued operation of the ESP, use of the SOx reducing catalyst, and installation of a tail gas treatment unit (TGTU) at the SRU shall be considered BACT for this project. Tesoro shall comply with its established emissions caps for these pollutants.

¶ 48 Utah Physicians filed a request for agency action with the Utah Department of Environmental Quality (UDEQ), asking it to reverse UDAQ's approval order. Utah Physicians argued that the BACT analysis performed by the UDAQ engineer was inadequate and that UDAQ did not provide a different analysis after Tesoro submitted its updated July 25 BACT review.

¶ 49 UDEQ appointed an ALJ to review Utah Physicians' claims. The ALJ concluded that he was required to apply "appellate-like procedures and standards of review" to his review of the approval order and that he was not conducting "a trial *de novo* on the merits." In conducting an appellate review of the approval order, the ALJ concluded that UDAQ had adopted Tesoro's updated July 25 BACT

analysis as its own, and, therefore, it was this analysis that Utah Physicians had to show was deficient. Thus, the ALJ reviewed Utah Physicians' claimed errors in light of Tesoro's July 25 BACT analysis and recommended that the request for agency action be denied. After reviewing the ALJ's written recommendation, the director of UDEQ adopted it in full and issued a final agency action rejecting Utah Physicians' request to reverse UDAQ's approval order.

¶ 50 Utah Physicians appealed from this final agency action to this court. In its opening brief, it once again argued that UDAQ's BACT analysis was legally inadequate. Utah Physicians, however, made no mention of the ALJ's (and by extension, UDEQ's) treatment of this argument. And it only made a brief reference to UDEQ's final agency action in order to note that this court owes no deference to those conclusions:

> Moreover, the Executive Director's [i.e., UDEQ's] November 17, 2014 Final Order is owed no deference. The Executive Director necessarily limited her review to the same administrative record that is before this Court, Utah Code Ann. § 19-1-301.5(8)(a), to which she applied the same standard of review that this court will apply to agency factual determinations.

### I. ADEQUACY OF UTAH PHYSICIANS' OPENING BRIEF

¶ 51 The majority concludes that because Utah Physicians does not address the ALJ's decision (which was adopted wholesale by UDEQ) in its opening brief, its arguments are inadequately briefed and this court should not address them on the merits. Thus, the majority holds for the first time that an appellant's failure to grapple with an intermediate appellate review of a tribunal's decision is a fatal briefing defect. I respectfully disagree.

¶ 52 This court reviews an intermediate appellate decision for correctness, granting no deference to the lower appellate court or tribunal's review of the rulings and conclusions of the fact-finding court or tribunal. *See Yuanzong Fu v. Rhodes*, 2015 UT 59, ¶ 12, 355 P.3d 995. "The correctness of the [intermediate appellate body's] decision turns, in part, on whether it accurately reviewed the [fact-finding] court's decision under the appropriate standard of review." *Id.* (citation omitted). Thus, in order for this court to determine if an intermediate appellate decision is correct, we must step into the shoes of the intermediate appellate court or tribunal and review the fact-finder's decisions ourselves under the appropriate standard of review. *See id.*

¶ 53 In this case, therefore, we owe no deference to the ALJ's intermediate appellate review of UDAQ's approval order. Moreover, in order for this court to review the ALJ's review of the approval order, we must ourselves review the UDAQ approval order under the correct standard of review. *See id.* ("[I]n order to determine whether the court of appeals erred in finding that the district court did not abuse its discretion, we must ourselves review the district court's decision for an abuse of discretion." (citation omitted)).

¶ 54 Thus, Utah Physicians correctly stated in its opening brief that this court owes no deference to the ALJ's review of UDAQ's decision to grant Tesoro's permit request. Utah Physicians therefore argued in its opening brief that UDAQ's permitting decision was in error and ignored the ALJ's review of this decision. The majority views Utah Physicians' choice to directly attack UDAQ's decision as an incurable misstep that prevents this court from addressing the merits of Utah Physicians' allegations of error below.

¶ 55 I acknowledge that addressing the reasoning of an intermediate appellate decision is a wise best practice for appellants. Although this court owes no deference to the conclusions of an intermediate appellate body, an appellant ignores an intermediate appellate decision at its peril because the reasoning of such a decision may be persuasive to this court. Additionally, there may be defects in the briefing before the intermediate appellate court that would prevent this court from addressing certain arguments. I would agree that an appellate argument could be waived if it is not presented to the intermediate appellate body. And an intermediate appellate body's decision not to review a particular argument because it was inadequately briefed or due to a marshaling defect cannot be ignored; a litigant before this court must directly challenge such a conclusion. Appellants cannot prevail in this court on an issue they did not raise or did not adequately raise in an intermediate appeal.

¶ 56 As the majority opinion observes, the ALJ concluded that Utah Physicians did not marshal the evidence for many of the substantial evidence arguments it raised below. *Supra* ¶ 9. I agree that Utah Physicians' failure to challenge the ALJ's marshaling determination for these substantial evidence claims precludes this court from evaluating them because the ALJ's marshaling determinations go to the adequacy of Utah Physicians' presentation of these arguments to the ALJ.

¶ 57 But Utah Physicians did not confine itself to substantial evidence arguments. It argued to this court that UDAQ's BACT analysis was inadequate as a matter of law. It preserved this issue in the proceedings before UDAQ by arguing that its BACT analysis was "legally inadequate" because it relied exclusively upon an old BACT analysis without any consideration of whether it should be updated. Utah Physicians preserved this issue again by raising it before the ALJ. It argued in its opening brief in those proceedings that UDAQ's BACT analysis was inadequate, and that nothing in the record suggests that UDAQ adopted Tesoro's more robust July 25 BACT analysis as its own. Thus, there is no preservation problem with this line of argument. Nor can there be a marshaling problem because it is not a substantial evidence argument. Utah Physicians is challenging the legal adequacy of the analysis employed by UDAQ, not the absence of evidence to support its conclusions.

¶ 58  The adequacy of Utah Physicians' briefing of this argument in this court, therefore, boils down to this: Did Utah Physicians run afoul of our briefing standards by arguing that UDAQ erred rather than arguing that the ALJ erred by affirming UDAQ? I would say no. Because the ALJ performed the function of an appellate court, these two formulations of Utah Physicians' argument are functionally the same. This court does not grant any deference to the ALJ's conclusions, and in order to determine whether the ALJ erred in reviewing UDAQ, we must review the UDAQ approval order ourselves under the standard of review that the ALJ was required to apply. *See Yuanzong Fu*, 2015 UT 59, ¶ 12. At worst, Utah Physicians failed to engage with the ALJ's reasoning, which could have been persuasive to this court. But a failure to address potentially persuasive counterarguments has never been a reason not to resolve an appellant's arguments.

¶ 59 Indeed, nothing in our inadequate briefing jurisprudence suggests that this court should disregard an argument that directly challenges the decision of the fact-finder rather than the reasoning of an intermediate appellate body. The guiding principle in our inadequate briefing caselaw is rule 24 of the Utah Rules of Appellate Procedure. This rule lays out the briefing requirements for appeals and gives litigants fair notice of what is required for a brief filed in this court or the court of appeals. We have therefore tied our past decisions not to address a particular argument to a violation of one of the requirements of rule 24. *See*, *e.g.*, *State v. Lee*, 2006 UT 5, ¶¶ 22–23, 128 P.3d 1179 (argument not considered because the appellant violated rule 24's requirement to provide "meaningful legal analysis" (citation omitted));

*Walker v. U.S. Gen., Inc.*, 916 P.2d 903, 908 (Utah 1996) (argument not considered because the appellant violated rule 24's requirements to cite the record and supporting legal authority). Rule 24, however, does not include a requirement that an appellant must challenge or engage with the reasoning of an intermediate appellate decision rather than the ruling of the fact-finding court or administrative body the appellant seeks to reverse. Thus, nothing in rule 24 gave Utah Physicians notice that its appeal would not be resolved on the merits.

¶ 60  I am also unaware of any caselaw that requires the dismissal of Utah Physicians' appeal. The majority relies upon *Allen v. Friel*, 2008 UT 56, 194 P.3d 903, but that case is distinguishable. In *Allen*, a district court denied a prisoner's PCRA petition, and the prisoner appealed. *Id.* ¶¶ 3–4. We held that the prisoner's opening brief to this court was inadequate because of a failure to properly cite legal authority or essential portions of the record. *Id.* ¶¶ 9–10. We also noted that the briefing was inadequate because "an appellant must allege the lower court committed an error that the appellate court should correct. If an appellant does not challenge a final order of the lower court on appeal, that decision will be placed beyond the reach of further review." *Id.* ¶ 7. We went on to clarify that "[s]ince an appeal is a resort to a superior court to review the decision of a lower court, Utah appellate rules require the appellant to address reasons why the district court's dismissal of his petition should be overturned." *Id.* ¶ 14.

¶ 61 *Allen* provides minimal guidance to this case because it involved a traditional appeal, with an appellate court reviewing a fact-finding court. In that scenario, *Allen* requires an appellant to identify errors in the decisions or rulings of the fact-finding body that has original jurisdiction over a legal claim. This appeal, however, is a horse of a different color. Here, this court is called upon to review an intermediate appellate body's review of a fact-finding tribunal's decision. The majority's interpretation of *Allen* to mean that an appellant's opening brief must challenge the reasoning of an intermediate appellate decision is flawed because *Allen* did not address this particular appellate posture. There are significant differences between a requirement to identify errors in the rulings of a fact-finding court or tribunal of original jurisdiction and a requirement to demonstrate error in an intermediate appellate review of a fact-finding court. The rulings of a court of original jurisdiction are often entitled to deference and are granted a presumption of regularity. But the conclusions of an intermediate appellate body are not entitled to either deference or a presumption of correctness.

¶ 62 Indeed, one of the issues raised by the appellant in *Allen* challenged a finding of fact made by the district court. *Id.* ¶ 20. The appellant's failure to address the district court's factual findings, which must be reviewed with substantial deference, may have led the *Allen* court to conclude that an appellant's briefing was inadequate. But in this case, none of the conclusions of the ALJ in reviewing the UDAQ approval order are owed deference.

¶ 63 Finally, *Allen* provides weak support for the notion of mandatory dismissal of an appeal without addressing the merits of an appellant's arguments. Although the *Allen* court concluded that the appellant's briefing was inadequate and should be dismissed on that ground, the court went on to resolve all of the appellant's arguments on the merits. *Id.* ¶¶ 19–35.

¶ 64 In summary, this is not an instance where the briefing is so poor that we must comb through the record or reconstruct the appellant's argument in order to address it. Utah Physicians cites the record and pertinent legal authority in support of its argument that UDAQ's BACT analysis was legally inadequate. This court should resolve this claim on the merits.

## II. UTAH PHYSICIANS HAS BRIEFED AT LEAST ONE POTENTIALLY MERITORIOUS CLAIM THAT UDAQ ERRED

¶ 65 In addition to being adequately briefed, Utah Physicians' legal challenge to UDAQ's BACT analysis also potentially merits reversal. The only BACT analysis produced by UDAQ is the brief and conclusory February 16 review issued in tandem with its official Intent to Approve Tesoro's application. Tesoro does not argue that the February 16 BACT analysis is adequate. Instead, Tesoro's argument before this court is that UDAQ impliedly adopted as its own the much more robust BACT analysis contained in Tesoro's July 25 submission. Tesoro further alleges that Utah Physicians never addresses the reasoning or evidence contained therein. Thus, the appeal turns on two questions: (1) Did UDAQ in fact adopt the July 25 submission as its own BACT analysis? and (2) Can an agency simply adopt a BACT analysis submitted by an applicant as its own critical review, or must the agency conduct and produce its own BACT analysis so that it can be reviewed by UDEQ and this court?

¶ 66 Utah Physicians has presented a good case for the proposition that UDAQ never adopted the July 25 BACT analysis submitted by Tesoro as its own. UDAQ certainly never said that it had reviewed this analysis and accepted it as its own. In fact, in its response to Utah

Physicians' criticism of UDAQ's BACT analysis, UDAQ stated that its BACT review was "addressed by the current source plan reviews," i.e., its February 16 engineering report. Additionally, UDAQ stated that the "emitting units included in the current project were adequately addressed in Tesoro's [December 21, 2011 application], and sufficient information was provided for the UDAQ to properly review." And perhaps most indicative of its ultimate BACT determination, UDAQ attached its engineering report to its final approval order for Tesoro's proposed project. The attached engineering report contained a BACT analysis that, in large part, merely repeated UDAQ's February 16 analysis and made no mention of Tesoro's expanded July 25 analysis.

¶ 67 If the July 25 submission cannot be attributed to UDAQ, it also appears that UDAQ's February 16 BACT analysis would be legally insufficient. Moreover, Tesoro may not use its July 25 BACT analysis as a *post hoc* rationalization for UDAQ's permitting decision. As the Supreme Court has recently affirmed, a government agency "must examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125 (citation omitted); *accord Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1575 (10th Cir. 1994) ("The agency must make plain its course of inquiry, its analysis and its reasoning. After-the-fact rationalization by counsel in briefs or argument will not cure noncompliance by the agency with these principles." (citation omitted)). "It is not the role of the courts to speculate on reasons that might have supported an agency's decision." *Encino Motorcars*, 136 S. Ct. at 2127. Thus, "[i]t is well-established that an agency's action must be upheld, if at all, on the basis articulated by the agency itself." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 50 (1983) (citations omitted).

¶ 68 Utah Physicians has presented a plausible argument that UDAQ has not adequately articulated reasons why Tesoro's proposed oil refinery expansion and the resulting increased emission of air pollutants meet the BACT standard. I believe this argument is adequately briefed and merits resolution by this court.

―――――――――